GENERAL ACCIDENT INSURANCE COMPANY *v.*
MATTHEW WHEELER ET AL.
(14314)

SHEA, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued October 30, 1991—decision released February 18, 1992

*J. Kevin Golger,* with whom, on the brief, was *George L. Holmes,* for the appellant (plaintiff).

*Stephen A. Finn,* for the appellees (defendants).

BERDON, J. The sole issue raised in this appeal is whether an insured, where there is more than one tortfeasor responsible for the accident, may recover under his or her underinsured motorist policy before first exhausting the liability insurance policies of all the tortfeasors. We conclude that an insured is required to exhaust the liability insurance coverage of only one tortfeasor in order to recover underinsured benefits.

The parties presented their claims on the basis of the following stipulated facts. The defendant, Matthew Wheeler (insured), a resident of the household of his father, James Wheeler, was insured by the plaintiff, General Accident Insurance Company, under an automobile liability policy covering two vehicles owned by James Wheeler. Because the limits for the underinsured coverage on each vehicle were $300,000, the insurance policy provided the insured with total effective underinsured coverage of $600,000.

On September 6, 1985, the insured sustained personal injuries when he was pinned between a parked vehicle and a moving vehicle owned and operated by Michael Norkowski. At the time of the accident, Norkowski was insured under an automobile liability policy in the amount of $20,000, which was paid in full to the insured pursuant to a settlement.

As a result of the accident, the insured instituted a civil suit against the city of Danbury and two of its police officers, which was still pending at the time of

this appeal. The insured alleges that the police officers' negligence was a proximate cause of his injuries because they positioned their unattended police vehicle in such a manner that its headlights blinded the vision of drivers coming in the opposite direction. In the police report, Norkowski stated that he had been blinded by the headlights of the police vehicle. In the Danbury action, the defendants have insurance available to them under an automobile liability insurance policy and a general municipal liability policy, each of which provides coverage limits of one million dollars. The defendants in that action indicate that some of the allegations made by the insured are being defended under the automobile liability policy and the others under the municipal liability policy.

After the settlement with Norkowski, the insured made a demand to the plaintiff for underinsured motorist arbitration. Pursuant to the terms of the insurance policy, all the issues of coverage and damages were submitted to a three member arbitration panel. After reviewing evidence and hearing argument, the majority of the panel found in favor of the insured as follows: (1) It is only necessary to exhaust the policy or policies of one tortfeasor before proceeding with arbitration; (2) the insured had exhausted Norkowski's insurance policy; (3) the insured sustained damages in the amount of $395,000; (4) the plaintiff shall receive a credit of $20,000 paid to the insured under Norkowski's insurance policy; (5) the plaintiff shall pay to the insured the net sum of $375,000; and (6) "[a]n insurer may require the insured to hold in trust all rights against any defendants in the Danbury action pursuant to § [38-175a-6 (e) of the Regulations of Connecticut State Agencies] for the payment it shall make."

The plaintiff filed an application in Superior Court to set aside the arbitration award pursuant to General

Statutes § 52-418[1] on the ground that the insured must first exhaust the limits of the liability policies of all the tortfeasors. The insured filed a cross application to confirm the award pursuant to General Statutes § 52-417.[2] The trial court denied the plaintiff's application to vacate the award and granted the insured's cross application to confirm the award. The plaintiff appealed to the Appellate Court and we transferred the appeal to this court in accordance with Practice Book § 4023.

General Statutes (Rev. to 1987) § 38-175c (b) (1) and (2),[3] now reorganized and recodified as General Statutes § 38a-336 (b) and (d),[4] obligates insurance companies to pay the underinsured motorist coverage "after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have

[1] General Statutes § 52-418 provides in pertinent part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[2] General Statutes § 52-417 provides in pertinent part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award."

[3] General Statutes (Rev. to 1987) § 38-175c provides in pertinent part: "(a) (1) Every [automobile liability insurance] policy shall provide insurance, herein called uninsured motorist coverage . . . .

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgment or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

[4] Public Acts 1990, No. 90-243, § 127.

been exhausted." General Statutes (Rev. to 1987) § 38-175c (b) (1). An underinsured motor vehicle is defined as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection." General Statutes (Rev. to 1987) § 38-175c (b) (2). On the basis of § 38-175c (b) (1), the plaintiff claims that the insured, prior to his right to recover for underinsured coverage, was not only required to exhaust the liability policy of Norkowski, but also the liability policies of the city of Danbury and the police officers to the extent that they were liable as joint tortfeasors.

Section 38-175c (b) (1) is ambiguous as to the question of whether the insured must exhaust all of the underlying liability policies pertaining to one or all tortfeasors. In construing the statute, we approach this question according to "well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature." *Texas Refining & Mfg. Co.* v. *Commissioner,* 202 Conn. 583, 589, 522 A.2d 771 (1987).

Our analysis begins with the relationship between uninsured and underinsured motorist coverage. The underinsured coverage was adopted as a piggyback provision to the uninsured coverage in 1979. Public Acts 1979, No. 79-235. "Since underinsured motorist coverage, as defined in General Statutes § 38-175c, can be determined only by reference to and in comparison with the insured's uninsured motorist coverages, and since claim is made against an insured's uninsured motorist coverage after it is determined that the at-fault party is underinsured, the regulations which apply to unin-

sured motorist coverage must equally apply to underinsured motorist coverage." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 399–400, 446 A.2d 1059 (1982).

Our conclusion that the insured merely needs to exhaust the liability policies of one tortfeasor is supported by the regulations of the insurance commissioner. Not only is the commissioner obligated to adopt regulations with respect to the minimum provisions to be included in the policy of insurance issued in this state; General Statutes § 38a-334; we presume that these regulations are "an accurate reflection of the legislative intent articulated in the statute's more general language." *AFSCME* v. *New Britain,* 206 Conn. 465, 470, 538 A.2d 1022 (1988).[5] This presumption is further underscored by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., which provides for legislative oversight through the legislative regulation review committee prior to approval of the regulations. General Statutes § 4-170.

Section 38-175a-6 (a) of the Regulations of Connecticut State Agencies provides in pertinent part that the "insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from *the* owner or operator of *an* uninsured [or underinsured] motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured [or underinsured] motor vehicle." (Emphasis added.) The regulations envisioned the requirement that the insurance coverage of only one tortfeasor be exhausted. This conclusion is further confirmed by § 38-175a-6 (e), which authorizes that the insurer may, in its policy, "require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim, pro-

[5] "The regulations, however, must carry into effect the purpose and intent of the statute pursuant to which they are enacted." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 196, 530 A.2d 171 (1987).

vided that the insurer shall not acquire by assignment, prior to settlement or judgment, its insured's right of action to recover for bodily injury from any third party." If the insured were required to exhaust the liability policies of all tortfeasors before resorting to the underinsured provision of the policy, this regulation would be superfluous.

In *McAllaster* v. *Bruton,* 655 F. Sup. 1371 (D. Me. 1987), the federal District Court, in construing § 38-175c (b) (1), held that the plaintiff was only required to exhaust the policies of one of two joint tortfeasors, in order to trigger the right to proceed under the underinsured motorist provisions of his policy. The court based its decision in part on the insurance regulation, § 38-175a-6 (e), which grants the insurer permission to include in its policy the right to be reimbursed if the insured recovers from the joint tortfeasor. Id., 1379. Although the interpretation of our state statute by a federal court is not binding upon us, it may be persuasive authority. See *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 301, 305, 472 A.2d 316 (1984).[6]

[6] In none of our prior decisions have we implied that the underinsured coverage can be triggered only after exhaustion of the policies of all the joint tortfeasors. See *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 571 A.2d 104 (1990) (General Statutes § 38-175c requires that an insured may not access his underinsured motorist insurance before the underinsured person responsible for the accident pays the limit of his liability policy); *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 569 A.2d 1105 (1990) (a tortfeasor's vehicle is not "underinsured" pursuant to § 38-175c (b) (2) when the aggregate limits of the tortfeasor's liability insurance coverage applicable at the time of the accident exceeds the uninsured motorist coverage available to the insured); *Nicolletta* v. *Nationwide Ins. Co.,* 211 Conn. 640, 560 A.2d 964 (1989) (§ 38-175c (a) (2) does not furnish a statutory basis for imposing a limitation on the stacking of uninsured and underinsured motorist coverage in an automobile liability insurance policy); *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 530 A.2d 171 (1987) (the insurer is not entitled to a set off from "a dram shop" policy because it is not a "bodily injury liability bond or insurance policy" for purposes of § 38-175a-6 (e) of the Regulations of the Connecticut State Agencies).

Likewise, other jurisdictions have held that under similar statutes, the insured was not required to exhaust the policies of all joint tortfeasors. See, e.g., *Mulholland* v. *State Farm Mutual Automobile Ins. Co.,* 171 Ill. App. 3d 600, 617, 527 N.E.2d 29 (1988); *Motorist Mutual Ins. Co.* v. *Tomanski,* 27 Ohio St. 2d 222, 223, 271 N.E.2d 924 (1971).

Public policy also supports our conclusion that an insured needs to exhaust the liability policies of only one tortfeasor before he may recover under his underinsured motorist policy. If the plaintiff's claim were carried out in practice, the insured could be required to pursue claims of weak liability against third parties, thereby fostering marginal and costly litigation in our courts. See *Mulholland* v. *State Farm Mutual Automobile Ins. Co.,* supra. This would further exacerbate the problems envisioned by the dissenters in *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 214–16, 571 A.2d 104 (1990). "The effect of the majority's holding is to require a victim who has uninsured motorist coverage exceeding the limit of the tortfeasor's liability insurance to obtain the last dollar of that insurance under the penalty of losing the entire benefit of his uninsured motorist coverage. By requiring the victim to obtain the full amount of the tortfeasor's liability coverage before proceeding against the uninsured motorist carrier, the majority has erected a barrier to the settlement of liability claims that is likely to have a serious impact upon our overburdened jury trial docket." Id., 214 (*Shea, J.,* dissenting).[7] Thus, substantial delays would result when the party primarily liable has paid the full proceeds of the liability insurance and the

---

[7] *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 213, 571 A.2d 104 (1990), held that General Statutes § 38-175c (b) (1) requires that before the underinsured clause is triggered, the underinsured must pay the entire limits of the liability policies on the tortfeasor vehicle instead of merely giving a credit for the entire policy.

insured is still compelled to pursue costly litigation through our courts against marginal, or in some cases phantom, tortfeasors.

Nevertheless, the insurer is protected by the regulations, which permit it to require in the policy that if the insured recovers against a third party joint tortfeasor, the insured must hold the proceeds in trust for the insurer and pay it to the same. Indeed, the insurance policy in the present case requires this of the insured if he recovers from another.[8]

Accordingly, we hold that under the provisions of § 38-175c (b) (1) and (2), now recodified as § 38a-336 (b) and (d), the insured need only exhaust the "liability bond or insurance policies" of one tortfeasor in order for the insured to be eligible to pursue underinsured benefits.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[8] The insured's Personal Auto Policy, Endorsement PP 00 01, provides in relevant part: "A. If we [the insurer] make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

"1. Whatever is necessary to enable us to exercise our rights; and

"2. Nothing after loss to prejudice them. . . .

"B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

"1. Hold in trust for us the proceeds of the recovery; and

"2. Reimburse us to the extent of our payment."