### CHESNEL FLORESTAL *v.* GOVERNMENT EMPLOYEES INSURANCE COMPANY
### (14953)

### JUDY MERZULIE *v.* GOVERNMENT EMPLOYEES INSURANCE COMPANY
### (14954)

Borden, Berdon, Katz, Palmer and Landau, Js.

Argued November 2, 1995—decision released March 19, 1996

*Wesley M. Malowitz*, with whom, on the brief, was *Russell J. Berkowitz*, for the appellants (plaintiffs).

*J. Kevin Golger*, for the appellee (defendant).

PALMER, J. The principal issue raised by these consolidated appeals is whether we should overrule our decision in *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 569 A.2d 1105 (1990), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 37, 594 A.2d 977 (1991), wherein we concluded that a tortfeasor is not underinsured within the meaning of General Statutes (Rev. to 1989) § 38-175c (b) (2), now recodified as § 38a-336 (e),[1] unless the aggregate limits of the tortfeasor's liability insurance coverage applicable at the time of the accident are less than the underinsured motorist coverage available to the claimant. We now reaffirm our holding in *Gould*.

The facts relevant to this appeal are undisputed. The plaintiffs, Chesnel Florestal and Judy Merzulie, were traveling in an automobile owned and operated by Florestal when they sustained injuries and other damages stemming from a multivehicle traffic accident. The driver of the vehicle that caused the accident (tortfeasor) was insured under a liability policy that provided coverage of up to $20,000 per person and $40,000 per accident. The tortfeasor's liability insurer paid $20,000 to a claimant not a party to this action, and the remaining $20,000 was evenly divided among four other claimants, including the two plaintiffs here, each of whom received $5000.

At the time of the accident, Florestal was covered under an insurance policy issued to him by the defend-

[1] General Statutes § 38a-336 (e) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

At all times relevant to this appeal, the above subsection was codified as § 38a-336 (d). In 1993, § 38a-336 was amended by No. 93-297 of the 1993 Public Acts, which added a new subsection (d), causing the previous subsection (d) to be relettered as subsection (e). Because the content of the new

ant, Government Employees Insurance Company, that provided underinsured motorist coverage of $20,000 per person and $40,000 per accident. Because that policy also covered passengers in the vehicle owned by Florestal, Merzulie was eligible for underinsured motorist benefits under the policy, as well. After settling with the tortfeasor's insurer, the plaintiffs, each of whom sustained damages exceeding $5000, submitted claims to the defendant for underinsured motorist benefits. The defendant denied coverage in both cases, and the claims were submitted to arbitration.

The arbitrator concluded that the plaintiffs were entitled to underinsured motorist benefits pursuant to § 38a-336 because the payments that they had received from the tortfeasor's insurance carrier were less than the amount of the underinsured motorist coverage available under the policy issued by the defendant. The arbitrator also found that Merzulie and Florestal were entitled to damage awards totaling $19,566.49 and $14,015.21, respectively, the awards to be reduced by the $5000 payment already made to each of them by the tortfeasor's insurer.

The plaintiffs filed applications in the Superior Court to confirm the arbitration awards and the defendant filed applications to vacate the awards. The trial court concluded that under the construction of § 38a-336 (e) adopted by this court in *American Motorists Ins. Co. v. Gould*, supra, 213 Conn. 625, a vehicle is underinsured only if the total liability limits of the tortfeasor's policy are less than the limits of the claimant's underinsured motorist coverage, regardless of whether some or all of the tortfeasor's coverage has been exhausted due to payments to other injured claimants. Because the limits of Florestal's underinsured motorist coverage did not

___

subsection (e) and the old subsection (d) are identical, all references in this opinion are to the current statutory provisions.

exceed the limits of the tortfeasor's liability policy, the trial court further concluded that the tortfeasor was not underinsured within the meaning of § 38a-336 and, accordingly, granted the defendant's applications to vacate the arbitration awards.

The plaintiffs appealed from the judgments of the trial court to the Appellate Court,[2] and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). On appeal, the plaintiffs contend that we should reconsider and overrule our holding in *Gould* in favor of the construction of § 38a-336 (e) adopted by the arbitrator. Alternatively, the plaintiffs maintain, first, that even if we refuse to overrule *Gould*, this case is distinguishable from *Gould* on its facts and, second, that application of our holding in *Gould* to the facts of this case renders § 38a-336 violative of the equal protection clauses of the federal and state constitutions. We are not persuaded by any of these claims and, therefore, we affirm the judgments of the trial court.

## I

We first address the plaintiffs' contention that *Gould* should be overruled as wrongly decided. In *Gould*, the claimant and three others were injured when the automobile in which they were passengers was involved in a one-car accident. The driver of the automobile was insured under liability policies with limits totaling $140,000. By agreement of the parties, the $140,000 was allocated among the four passengers, with the claimant receiving $21,000. Because the claimant's damages exceeded $21,000, she thereafter sought payment under the underinsured motorist provisions of certain applicable policies, including the driver's liability policy. The arbitrator awarded the claimant underinsured motorist

---

[2] The Appellate Court granted the plaintiffs' motion to consolidate the two cases for appeal.

benefits, and the driver's insurance carrier filed an application in the Superior Court to vacate the award. The trial court denied the insurer's application and rendered judgment for the claimant. In reversing the judgment of the trial court, we rejected the claimant's argument that only the amount actually paid to her under the tortfeasor's liability policy should be considered in determining whether the operator of the automobile was underinsured. We concluded, rather, that in light of the plain language of § 38a-336 and the construction afforded similarly worded statutes in other jurisdictions, underinsured motorist benefits are not recoverable under our statutory scheme unless the limits of the underinsured motorist coverage available to the claimant exceed the total amount of liability insurance available to satisfy claims against the tortfeasor. *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 628–33; see also *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 34.

The plaintiffs acknowledge that, if this case is not factually distinguishable from *Gould*, their claim for underinsured motorist benefits is foreclosed under the construction of § 38a-336 that we adopted in *Gould*. They maintain, however, that *Gould* was incorrectly decided and that benefits are recoverable under § 38a-336 when the limits of the claimant's underinsured motorist coverage exceed the amount available to the claimant under the tortfeasor's liability policy. In support of this claim, the plaintiffs contend that our holding in *Gould*: (1) is contrary to the intent of the legislature; (2) leads to arbitrary results; (3) is not consistent with the reasonable expectations of Connecticut insurance consumers; (4) is inconsistent with our other recent case law; and (5) will result in an increase in litigation.

Before addressing these arguments, it must be noted that we are constrained by principles of stare decisis to adhere to the precedent set by *Gould* in the absence

of compelling reason to abandon it. See, e.g., *State* v. *Somerville*, 214 Conn. 378, 384–85, 572 A.2d 944 (1990). "Stare decisis, although not an end in itself, serves the important function of preserving stability and certainty in the law. Accordingly, 'a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. Maltbie, Conn. App. Proc., p. 226.' *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 62, 111 A.2d 4 (1955); see also *State* v. *Somerville*, [supra, 384–85]; *White* v. *Burns*, 213 Conn. 307, 335–36, 567 A.2d 1195 (1990)." *Kluttz* v. *Howard*, 228 Conn. 401, 406, 636 A.2d 816 (1994). "This is especially true when the precedent involved concerns the interpretation or construction of a statute." *Herald Publishing Co.* v. *Bill*, supra, 62. Bearing in mind the plaintiffs' heavy burden, we now turn to their arguments in support of overruling *Gould*.

The plaintiffs first claim that our construction of § 38a-336 (e) is contrary to the intent of the legislature. Because the legislature has defined an underinsured motor vehicle as one with applicable policy limits less in amount than the injured victim's uninsured motorist limits; see footnote 1; the plaintiffs do not dispute that our holding in *Gould* is supported by a literal reading of § 38a-336 (e). The plaintiffs contend, however, that a strict construction of § 38a-336 (e) is inconsistent with the legislative purpose underlying the enactment of our uninsured and underinsured motorist statutes, which, they assert, is to ensure "that automobile accident victims receive fair, just and reasonable compensation for their injuries."

It is true, broadly stated, that the purpose of underinsured motorist coverage " 'is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.' " *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 398, 579 A.2d 525

(1990). It does not follow, however, that the legislature, in providing for underinsured motorist coverage, necessarily intended to guarantee that each and every accident victim would be fully, or even adequately, compensated for injuries caused by an underinsured motorist. As we observed in *Gould*, "[c]ourts construing statutes like [§ 38a-336] that compare uninsured motorist coverage limits with tortfeasor liability limits have generally held that *the legislative objective was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage.* 'Where an underinsured motor vehicle is statutorily defined as an insured motor vehicle with applicable liability limits less in amount than the injured person's uninsured motorist's limits, it is clear that the underinsured motorist coverage is not applicable if the insured person's uninsured motorist limits are equal to, or less than, the tortfeasor's liability limits.' 3 I. Schermer, Automobile Liability Insurance [1994 Rev.] § 35.06. . . . The fact that [the tortfeasor's] liability coverage has . . . been exhausted because of multiple claims does not change the effect of the statute in activating uninsured motorist coverage only when the liability insurance of the tortfeasor is less in amount." (Emphasis added.) *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 632–33. Moreover, the plaintiffs' argument finds no support in the legislative history of § 38a-336, which is devoid of any indication that the legislature intended for subsection (e) to be construed in a manner contrary to its plain language.

Furthermore, in 1993, several years after our decision in *Gould*, the legislature enacted the Automobile Insurance Reform Act; Public Acts 1993, No. 93-297; which, among other things, requires any insurance company licensed to sell automobile liability insurance in this

state to offer a type of underinsured motorist coverage known as "underinsured motorist conversion coverage." See General Statutes § 38a-336a.[3] This option, which is available *for an additional premium* to consumers who wish to purchase it *in lieu of standard underinsured motorist coverage under § 38a-336*, provides enhanced protection to victims of underinsured motorists because, in contrast to coverage under § 38a-336, it is activated when "the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the *fair, just and reasonable damages of the covered person.*"[4]

[3] General Statutes § 38a-336a provides: "Underinsured motorist conversion coverage. (a) Each insurer licensed to write automobile liability insurance in this state shall offer, for an additional premium, underinsured motorist conversion coverage with limits in accordance with section 38a-336. The purchase of such underinsured motorist conversion coverage shall be in lieu of underinsured motorist coverage pursuant to section 38a-336.

"(b) Such coverage shall provide for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles.

"(c) Each insurer shall be obligated to pay to the insured, up to the limits of the policy's underinsured motorist conversion coverage, after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. If the insured purchases such underinsured motorist conversion coverage, then in no event shall the underinsured motorist coverage be reduced on account of any payment by or on behalf of the tortfeasor or by any third party.

"(d) The selection of coverage under this section shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured.

"(e) For purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the fair, just and reasonable damages of the covered person.

"(f) The provisions of this section shall apply to all new and renewal policies issued on or after January 1, 1994." This statute includes amendments pursuant to Public Acts 1994, No. 94-243, §§ 5 and 6.

[4] General Statutes § 38a-336a (c) also provides in part that "[i]f the insured purchases . . . underinsured motorist conversion coverage, then in no event shall the underinsured motorist coverage be reduced on account of any payment by or on behalf of the tortfeasor or by any third party."

(Emphasis added.) General Statutes § 38a-336a (e). By retaining the standard option under § 38a-336 and providing for another, different kind of underinsured motorist coverage under § 38a-336a, it is apparent that the legislature chose to address the coverage issue raised in *Gould* not by overruling our holding therein but, rather, by mandating the availability of a more comprehensive, and more expensive, optional form of underinsured motorist coverage.

Moreover, the construction of § 38a-336 (e) urged by the plaintiffs is identical to the definition of underinsured motor vehicle contained in § 38a-336a (e). See footnote 3. Thus, under the plaintiffs' construction of § 38a-336 (e), there would have been no reason for the legislature to have established an entirely new and separate form of underinsured motorist coverage under § 38a-336a. Furthermore, under § 38a-336a (a), underinsured motorist conversion coverage shall be available at a premium *greater* than that charged for coverage pursuant to § 38a-336. Under the plaintiffs' interpretation of § 38a-336, however, such coverage is identical to the coverage now available under § 38a-336a; consequently, there would be no cause for anyone to purchase underinsured motorist conversion coverage. The legislature could not have intended such a bizarre result. See *State* v. *Spears*, 234 Conn. 78, 92, 662 A.2d 80 (1995) (principles of statutory construction require that we not construe a statute in a manner that will lead to absurd consequences or bizarre results); see also *Simms* v. *Warden*, 229 Conn. 178, 187–88, 640 A.2d 601 (1994) (because the legislature is presumed to have created a harmonious and consistent body of law, we read statutes together when they relate to the same subject matter). Accordingly, we are unpersuaded by the plaintiffs' contention that our holding in *Gould* is contrary to the intent of the legislature.[5]

---

[5] The plaintiffs correctly assert that under our construction of § 38a-336, they would have been able to obtain a greater recovery had the tortfeasor

The plaintiffs' second argument, closely related to their first, is that our construction of § 38a-336 must be incorrect because it leads to arbitrary and unjust results. In support of this claim, the plaintiffs point out that they each could have recovered up to $20,000 under the underinsured motorist provisions of Florestal's policy had the per person limits of the tortfeasor's policy been even one dollar less.[6] The plaintiffs also maintain that it is similarly unfair to deprive an accident victim of underinsured motorist benefits simply for failing to assert a claim against the tortfeasor's liability policy before that policy's limits have been exhausted by another claimant or claimants. Although certain inequities may arise in some underinsured motorist cases

been uninsured. They further maintain that this result is inconsistent with the legislature's principal reason for amending our uninsured motorist statutes in 1979; Public Acts 1979, No. 79-235; to include underinsured motorist coverage, namely, "to remedy the 'anomalous situation' . . . where an injured party could find himself in a better position if the tortfeasor had no liability insurance than if he had only the statutory minimum amount." *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 390–91, 446 A.2d 1059 (1982), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 594 A.2d 977 (1991). As we have indicated, however, we may not presume that the legislature sought to address every possible anomalous situation that may arise under the statutory scheme governing uninsured and underinsured motorist coverage. Moreover, we must construe § 38a-336 (e) "without reference to whether [we think that provision] would have been or could be improved by the inclusion of other provisions." *Battersby* v. *Battersby*, 218 Conn. 467, 471, 590 A.2d 427 (1991); see also *Simonette* v. *Great American Ins. Co.*, 165 Conn. 466, 338 A.2d 453 (1973). Accordingly, our duty is not to second guess the wisdom of a clear expression of legislative will but, rather, to ascertain and give effect to the intent of the legislature. See *Gonsalves* v. *West Haven*, 232 Conn. 17, 26, 653 A.2d 156 (1995). In light of the plain language of § 38a-336 (e) and the legislature's apparent validation of our interpretation of that statutory subsection as reflected in its enactment of § 38a-336a, we reject the plaintiffs' argument that *Gould* must be overruled in order to avoid an anomalous result in this case.

[6] Of course, in that instance, the plaintiffs would still recover under the tortfeasor's liability policy until that policy was exhausted, and any such recovery would be reduced by amounts received from the tortfeasor's policy. Moreover, if there were no other claimants under the tortfeasor's policy, the plaintiffs would recover no more than one dollar under the defendant's underinsured motorist policy.

involving multiple claimants, redress from any such unfairness must be sought from the legislature, not from the courts, in light of the clearly expressed intent of the legislature. See *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 455 n.25, 664 A.2d 279 (1995); *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 151–52, 617 A.2d 451 (1992).

Furthermore, as we have previously indicated, the purpose of underinsured motorist coverage is neither to guarantee full compensation for a claimant's injuries nor to ensure that the claimant will be eligible to receive the maximum payment available under any applicable policy. Indeed, "underinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor . . . ." *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 573, 624 A.2d 892 (1993). Rather, "[t]he public policy of § 38a-336 is to give a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the underinsured motorist had maintained *an adequate policy of liability insurance. Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 499, 610 A.2d 1212 (1992); *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982)." (Emphasis added.) *Smith* v. *Safeco Ins. Co. of America*, supra, 573. The construction of § 38a-336 that we adopted in *Gould* is consistent with this public policy because the plaintiffs were injured by a tortfeasor who had, in fact, maintained a policy of liability insurance "equal to the amount of [the plaintiffs'] uninsured motorist coverage." *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 632. It is apparent, therefore, that the plaintiffs are denied a full recovery in this case not because the tortfeasor was inadequately insured but, rather, because there were multiple claimants who sought to recover under the tortfeasor's liability policy. Thus, we are constrained to adhere to our holding in

*Gould* despite the unfortunate fact that, under *Gould,* some accident victims with underinsured motorist coverage will be denied satisfactory compensation for their injuries.

The plaintiffs next argue that our construction of § 38a-336 is inconsistent with the reasonable expectations of insurance consumers in this state. This argument is inapposite. While "[i]t is a basic principle of insurance law that *policy language* will be construed as laymen would understand it"; (emphasis added) *Cody* v. *Remington Electric Shavers,* 179 Conn. 494, 497, 427 A.2d 810 (1980); no similar rule applies to our construction of legislative enactments. Rather, "[t]he fundamental objective of statutory construction is to ascertain and give effect to the apparent intent of the *legislature.*" (Emphasis added; internal quotation marks omitted.) *Concept Associates, Ltd.* v. *Board of Tax Review,* 229 Conn. 618, 622, 642 A.2d 1186 (1994). Moreover, because legislative enactments are presumed to reflect the will of the people, it cannot seriously be argued that the clearly expressed intent of the legislature is inconsistent with the reasonable expectations of the public. Because we have concluded that our construction of § 38a-336 accurately reflects the intent of the legislature, the plaintiffs' argument must fail.

The plaintiffs also contend that several of our recent cases, including *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 603 A.2d 385 (1992), *Stephan* v. *Pennsylvania General Ins. Co.,* 224 Conn. 758, 621 A.2d 258 (1993), and *Buell* v. *American Universal Ins. Co.,* 224 Conn. 766, 621 A.2d 262 (1993), signal a departure from our holding in *Gould.* The plaintiffs misconstrue those cases.

In *General Accident Ins. Co.* v. *Wheeler,* supra, 221 Conn. 213, we held that underinsured motorist coverage is triggered in circumstances involving multiple tortfea-

sors when all of the liability policies applicable to one of the tortfeasors are exhausted; the claimant need not exhaust the liability policies of every tortfeasor. *Wheeler*, however, did not involve multiple claimants; the sole issue raised in *Wheeler* was "whether an insured, where there is more than one tortfeasor responsible for the accident, may recover under his or her underinsured motorist policy before first exhausting the liability insurance policies of all the tortfeasors." Id., 207. Because we did not consider in that case the question of whether the tortfeasor's vehicle was underinsured within the meaning of § 38a-336, the plaintiffs' reliance on *Wheeler* is misplaced.

The plaintiffs also assert that our decisions in *Stephan* v. *Pennsylvania General Ins. Co.*, supra, 224 Conn. 758, and *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 766, suggest that the determination of whether underinsured motorist coverage is available shall be based on the amount actually paid to the claimant under the tortfeasor's policy, rather than on the policy's liability limits. This contention is also unfounded. Both *Stephan* and *Buell* involved the issue of the amount by which a payment of underinsured motorist benefits shall be reduced to account for other payments received by the claimant or paid out by the insurer. Because neither of those cases considered the threshold question of when underinsured motorist coverage is triggered; see *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 36; they provide no support for the plaintiffs' contention.

The plaintiffs' final argument is that adherence to our statutory construction in *Gould* will dramatically increase our court dockets by forcing undercompensated claimants like themselves to seek a judgment directly against the tortfeasor. There has been no flood of litigation since *Gould* was decided six years ago, however, and there is no reason to expect that there

will be in the future. Furthermore, if there had been an influx of cases after *Gould*, that fact alone would not necessarily persuade us that we had misconstrued § 38a-336, for the legislature is free to enact legislation that is likely to result in additional litigation.

We are satisfied, therefore, that *Gould* was correctly decided. Accordingly, we decline to overrule it.

## II

The plaintiffs next argue that if we refuse to overrule *Gould*, we may nevertheless reach a different result in this case because it is factually distinguishable from *Gould*. In support of this contention, the plaintiffs point out that in *Gould*, the claimant was seeking underinsured motorist coverage under a policy issued to the tortfeasor, whereas in this case, the plaintiffs seek to trigger the underinsured motorist provisions of the policy issued to one of the claimants, Florestal. The plaintiffs have provided no reason, and we know of none, why this factual difference warrants a different construction of the statute. Because this case is legally indistinguishable from *Gould*, the plaintiffs' argument is unavailing.

## III

The plaintiffs' final claim is that § 38a-336, as applied in this case, violates the federal and state equal protection clauses; U.S. Const., amend. XIV; Conn. Const., art. I, § 20;[7] because, under the statutory construction

---

[7] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 20, of the Connecticut constitution, as amended, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

adopted in *Gould*, the plaintiffs fare worse than would similarly situated claimants injured by a motorist carrying no insurance. The plaintiffs concede that this issue was not raised below, but ask us to "exercise our appellate discretion in order to consider the issue, because it has been fully briefed here and is important to our underinsured motorist coverage legislative scheme." *Travelers Ins. Co.* v. *Kulla*, supra, 216 Conn. 397 n.5. We agree that the issue merits consideration, but are not persuaded by the plaintiffs' argument.

In order to analyze the constitutionality of this statute, we must first detail the principles applicable to equal protection analysis. "When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge. . . ."[8] (Internal quotation marks omitted.) *Benjamin* v. *Bailey*, 234 Conn. 455, 477, 662 A.2d 1226 (1995).

"Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation

---

[8] The plaintiffs do not contend that they are entitled to any greater protection under the equal protection provisions of the state constitution than they are under the analogous provisions of the federal constitution. For the purposes of this appeal, therefore, we treat those provisions as embodying the same level of protection.

is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." (Internal quotation marks omitted.) *Circuit-Wise, Inc.* v. *Commissioner of Revenue Services,* 215 Conn. 292, 300, 576 A.2d 1259 (1990). "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement [Board]* v. *Fritz,* 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368 (1980), reh. denied, 450 U.S. 960, 101 S. Ct. 1421, 67 L. Ed. 2d 385 (1981)], the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.,* 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659, reh. denied, 450 U.S. 1027, 101 S. Ct. 1735, 68 L. Ed. 2d 222] (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.,* [473 U.S. 432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]." *Nordlinger* v. *Hahn,* 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992).

The plaintiffs' equal protection claim is predicated on the assertion that § 38a-336 creates a class of accident victims who, in certain circumstances involving multiple claimants, are denied underinsured motorist coverage even though their injuries are not fully compensated under the tortfeasor's liability policy. Assuming that this group of accident victims constitutes a cognizable classification for equal protection purposes,[9] the plaintiffs have not established that the legislative policy underlying their purportedly disparate treatment is unreasonable. As we have previously observed, the purpose of § 38a-336 is to "give a personal injury claimant access to insurance protection to compensate for the

___

[9] We need not, and do not, decide whether § 38a-336 creates an identifiable category or class of persons for purposes of equal protection analysis.

damages that would have been recoverable if the underinsured motorist had maintained an adequate policy of liability insurance." *Smith* v. *Safeco Ins. Co. of America*, supra, 225 Conn. 573. Section 38a-336 reasonably furthers this legitimate public policy despite the fact that some accident victims are denied underinsured motorist coverage even though their injuries have not been fully compensated.

" '[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *D. A. Pincus & Co.* v. *Meehan*, 235 Conn. 865, 879, 670 A.2d 1278 (1996), quoting *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993); see also *Broadley* v. *Board of Education*, 229 Conn. 1, 8–10, 639 A.2d 502 (1994). Furthermore, those who challenge a statute on constitutional grounds bear the heavy burden of demonstrating the statute's invalidity beyond a reasonable doubt. *D. A. Pincus & Co.* v. *Meehan*, supra, 879–80. Because the classification allegedly created under § 38a-336 is rationally related to a legitimate state purpose, the plaintiffs cannot sustain their burden of establishing that § 38a-336 violates equal protection guarantees.

The judgments are affirmed.

In this opinion BORDEN, KATZ and LANDAU, Js., concurred.

BERDON, J., concurring. I join the opinion of the court. I write separately only to indicate that, in my

view, *Gould*[1] and *Coon*[2] were wrongly decided by this court. I agree with the plaintiff that the application of *Gould* and *Coon* can lead to bizarre and unjust results. In such circumstances, even when a statute is clear on its face, this court has resorted to statutory construction in order to avoid such mischief. *State* v. *Cain*, 223 Conn. 731, 744, 613 A.2d 804 (1992); *State* v. *Siano*, 216 Conn. 273, 278, 579 A.2d 79 (1990) ("[i]t is . . . a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results"). I am, however, constrained to join the court's opinion today for two reasons.

First, *Gould* and *Coon* were decided more than four years ago during which time the legislature visited and amended General Statutes § 38a-336 on several occasions,[3] but failed to legislatively overrule this court's interpretation of the statute. Second, in 1993, the legislature, which was aware of the issue, chose to ameliorate this problem only to a limited extent by requiring insurers to offer underinsured motorist conversion coverage. General Statutes § 38a-336a. Therefore, not only do principles of stare decisis guide me today, but constitutional respect for a coordinate branch of government requires my concurrence.

---

[1] *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 569 A.2d 1105 (1990), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 594 A.2d 977 (1991).

[2] *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 594 A.2d 977 (1991).

[3] Public Acts 1993, No. 93-77, § 2; Public Acts 1993, No. 93-297, § 1; Public Acts, Spec. Sess., May 25, 1994, No. 94-1, §§ 35, 36.