[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 65
This is a motion for reconsideration of this court's prior decision granting the defendants' motion to strike. The plaintiffs brought this wrongful death action individually, and on behalf of Mustafa Shaham in his capacity as the administrator of the estate of Bassan Shaham, against the defendants Gary Wheeler; Aaron Bahamonde; the Town of Newtown; Newtown Volunteer Ambulance Association, Inc.; Mary Hugo; Business Systems, Inc., a/k/a Danbury EMS; Matthew Cassavechia and John/Jane Does 1-10. They seek to recover for the defendants' allegedly wrongful treatment of the plaintiffs' deceased teenage son, Bassan.
On September 21, 1993, while at the family home, the decedent intentionally ingested a large quantity of medications in an attempt to commit suicide. Upon discovery of his condition, family members called the Newtown Police Department requesting assistance in transporting him to the hospital. Defendants Wheeler and Bahamonde, both Newtown police officers (hereinafter "officers") responded to the call, were informed of Bassan's condition, and took him into their custody. Instead of taking Bassan to the hospital, however, the officers took him to the Newtown police headquarters. While he was in custody at the police station, police personnel contacted the Newtown Volunteer Ambulance Association (hereinafter "EMTs") to respond to a drug overdose complaint. Upon arrival at the police department, the defendants diagnosed Bassan as having sustained a clinical drug overdose.[1]
After making this diagnosis, none of the representatives of the police or the ambulance service transported the decedent to the hospital. Subsequently, representatives from the Newtown police department dropped him off at a local parking lot. Approximately five hours later, he began to suffer from the effects of the overdose and was transported by ambulance to the hospital. He eventually died of acute Colchicine toxicity.
The plaintiffs allege, inter alia, that Bassan's death was proximately caused by negligence and gross negligence of the police officers in counts one and three; the negligence of the Town of Newtown in count seven; and the gross negligence of the defendant EMTs in count five and of the other EMTs in count six. In count eight, the plaintiffs allege that the negligent and grossly negligent conduct of all the parties caused the plaintiffs severe emotional distress. The remaining counts, two CT Page 66 and four, allege statutory claims against the Town of Newtown pursuant to Sec. 7-465 of the General Statutes.
The defendants, Newtown Volunteer Ambulance Association, Inc.; Mary Hugo and John/Jane Does 1-5, the EMTs, moved to strike counts five and eight of the plaintiffs' complaint, sounding in gross negligence and negligent infliction of emotional distress or bystander emotional distress, respectively. This court granted the motion to strike. See Shaham v. Wheeler, Superior Court, judicial district of Danbury at Danbury, Docket No. 321879 (June 26, 1996, Moraghan, J., 17 Conn. L. Rptr. 232) (hereinafterShaham I). The court understood at the time that the plaintiffs had conceded striking count five of the complaint, sounding in "gross negligence," and therefore, it confined its ruling to count eight. Shaham I, n. 1. As to that count, the court found that count eight sounded in bystander emotional distress, and concluded, inter alia, that since the plaintiffs had not alleged facts demonstrating contemporaneous sensory perception, the allegations in count eight were legally insufficient to maintain a cause of action in bystander emotional distress under Clohessyv. Bachelor, 237 Conn. 31, 52-54 (1996).
This motion to reargue requesting that the court reconsider its previous decision on two grounds followed. The plaintiffs contend, and the court now agrees that the plaintiffs did not concede striking count five, but rather they conceded that the court could strike count five "so long as the Court rules that Connecticut does not recognize `gross negligence' [as a cause of action granting recovery] for the activities of any of the defendants giving rise to the present lawsuit."[2] (Plaintiffs' Opposition to Motion to Strike, p. 3.). The plaintiffs argue that Connecticut's Good Samaritan law, Sec. 52-557b, does not extend immunity to the acts of volunteer emergency medical personnel which constitute "gross, wilful, or wanton negligence." The plaintiffs contend that no case has held that gross negligence is not a cause of action under the Good Samaritan statute, and therefore, the plaintiffs should be allowed to maintain an action for gross negligence against the defendant EMTs.
Second, the plaintiffs contend that contrary to the court's conclusion in Shaham I, count eight does not constitute an attempt to allege bystander emotional distress, but rather seeks redress for the defendants' alleged negligent infliction of emotional distress upon the plaintiffs for actions involving their deceased teenage son. The plaintiffs concede, and the court CT Page 67 agrees, that the allegations of the complaint do not bring the present case within the analytical framework of the line of cases alleging bystander emotional distress. See, e.g., Clohessy v.Bachelor, supra. The plaintiffs, therefore, request that the court reconsider the defendants' motion to strike count eight in the context of a claim for negligent infliction of emotional distress. They rely on Doe v. Cuomo, 43 Conn. Sup. 222 (1994), in support of their contention that the parents of a child who has been harmed through the actions of another may assert a cause of action for negligent infliction of emotional distress for themselves.
In support of their motion to strike count five, the defendants argue that our courts do not recognize a cause of action in "gross negligence" and, therefore, the plaintiffs must allege facts demonstrating a higher degree of fault than "gross negligence" to circumvent the immunity provided for under Sec.52-557b. As such, the defendants argue, count five must fail as being legally insufficient.
As to count eight, the defendants maintain their position that count eight purports, but fails, to state a claim sounding in bystander emotional distress. They argue further that, even if the court views count eight as a claim for negligent infliction of emotional distress, unlike Doe v. Cuomo, supra, the plaintiffs in the present case have not properly alleged the necessary allegations to show that the defendant EMTs owed a duty to the plaintiff parents.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Citations omitted; alteration in original; internal quotation marks omitted.) Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 214-15 (1992). The motion to strike may also be used to "test whether Connecticut is ready to recognize some newly emerging ground of liability." (Citation omitted; internal quotation marks omitted.) Castelvetro v. Mills, Superior Court, judicial district of New Haven at New Haven, Docket No. 320396 (January 31, 1994, Gray, J., 9 CSCR 232).
The motion to strike admits all facts well pleaded; RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 n. 2. (1994); but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS,CT Page 68Inc., 196 Conn. 91, 108 (1985). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Novametrix Medical Systems, Inc. v. BOC Group,Inc., supra, 215. "If a complaint contains the necessary elements of a cause of action, it will survive a motion to strike."Malizia v. Anderson, 42 Conn. Sup. 114, 116 (1991).
Count Five: Gross Negligence
Connecticut courts do not recognize a cause of action for gross negligence at common law. Decker v. Roberts, 125 Conn. 151,157 (1939), ("[G]ross negligence has never been recognized in this state as a separate basis of liability in the law of torts. We have never recognized degrees of negligence as slight, ordinary, and gross in the law of torts. . . ."); Dickerson v.Connecticut Co., 98 Conn. 87, 89 (1922), (expressly rejecting classification of negligence into slight, ordinary and gross). See also Kowal v. Hofher, 181 Conn. 355, 359 n. 3 (1980), (declining to address the plaintiff's allegation of gross negligence, and confining the court's ruling instead to the allegations of wanton and reckless misconduct).
Despite the courts' rejection of a cause of action in gross negligence, the state's "Good Samaritan" law, Sec. 52-557b of the General Statutes, provides immunity from liability to "good samaritans" who voluntarily render emergency medical services to those in need, but does not provide from immunity for acts that constitute "gross, wilful or wanton negligence." The applicable language of Sec. 52-557b recites that: "ambulance personnel . . . who renders [sic] emergency first aid to a person in need thereof, shall not be liable to such person assisted for civil damages for any personal injuries which result from acts or omissions by such person in rendering the emergency first aid, which may constitute ordinary negligence. . . . The immunity provided in this subsection does not apply to acts or omissions constituting gross, wilful or wanton negligence."
In the present case, this court is called upon to decide whether, in light of the language of the Good Samaritan statute, a plaintiff may state a cause of action in gross negligence against emergency medical personnel, despite the common-law prohibition against such a cause of action. Counsel has not cited, nor has the court's independent research revealed any case law interpreting or applying the Good Samaritan statute in this CT Page 69 or any other context. The Good Samaritan statute does not expressly create a cause of action in gross negligence in derogation of the common law, and therefore, that the plaintiffs in the present case may not maintain such a cause of action. A review of some basic principles of statutory construction may prove helpful at this point.
"[T]he fundamental objective of statutory construction is to ascertain and give effect to the apparent intent of the legislature." (Citations omitted; internal quotation marks omitted.) Florestal v. Government Employees Ins. Co.,236 Conn. 299, 311 (1996). However, "[i]t is . . . a rule of statutory construction that statutes in derogation of the common law are to be strictly construed." (Citations omitted; alterations in original; internal quotation marks omitted.) Copeland v. Warden,225 Conn. 46, 53 (1993). "Indeed, [n]o statute is to be construed as altering the common law, farther than its words import [and a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." (Citations omitted; alteration in original; internal quotation marks omitted.) Gorev. People's Savings Bank, 235 Conn. 360, 382 (1995). Finally, when enacting a statute, "the legislature is presumed to know the prevailing law. . . ." Norwalk v. Daniele, 143 Conn. 85, 87
(1955).
In light of the foregoing principles, the court is most reluctant to interpret Sec. 52-557b(b) as creating or permitting a cause of action in gross negligence in derogation of the common law rule prohibiting such a cause of action. In enacting §52-557b, it is clear that the legislature intended emergency medical personnel to be immune from suit in ordinary negligence. It is also clear that the legislature intended to provide only partial immunity, and intended to permit injured parties to sue for conduct constituting "gross, wilful or wanton negligence." However, the legislature did not go so far as to expressly create a cause of action in gross negligence under this statute, even though such a claim is barred at common law. Since the legislature did not explicitly create a cause of action in gross negligence, and since the state courts have explicitly declined to recognize one, this court is without authority to permit the plaintiffs to maintain such a cause of action in gross negligence.
Contrary to the plaintiffs' assertions to the contrary, this interpretation of the Good Samaritan statute will not deprive CT Page 70 injured parties of all recourse against the wrongful conduct of emergency medical personnel. Potential plaintiffs can still assert a claim sounding in wilful, wanton and reckless misconduct, a cause of action long recognized in this state. See, e.g., Menzie v. Kalmonowitz, 107 Conn. 197, 199-200 (1928); Dubayv. Irish, 207 Conn. 518, 531-34 (1988); Kowal v. Hofher, supra,181 Conn. 361-62. This court is satisfied that the foregoing interpretation satisfies the legislative intent of Sec. 52-557b
to provide limited immunity to emergency medical personnel for negligent acts and omissions while providing recourse for those injured by wilful and wanton misconduct, without defying long-established common-law principles barring claims in gross negligence.
Accordingly, the motion to strike count five is granted.
Count Eight: Negligent Infliction of Emotional Distress
As to count eight, the plaintiffs claim that this count alleges a cause of action sounding in negligent infliction of emotional distress, not in bystander emotional distress as this court concluded in Shaham I. This court is satisfied, despite the plaintiffs' argument to the contrary, with its analysis in ShahamI regarding the distinction between negligent infliction of emotional distress as involving an injury "produced by a plaintiff's fear of harm to himself," and bystander emotional distress as involving "apprehension of harm to another." ShahamI, citing Lee Lindahl, Modern Tort Law § 32.06 (Rev. Ed.). The court continues to entertain its doubt that our state courts would recognize a claim for redress of emotional injuries resulting from apprehension of harm to another under the rubric of negligent infliction of emotional distress, without satisfying the more stringent standard for a bystander emotional distress claim under Clohessy v. Bachelor, supra. However, the plaintiffs have at least attempted to allege the requisite elements of a claim for negligent infliction of emotional distress, and that for the purposes of this motion to reconsider, count eight will be treated as such a claim.
In order to state a claim for negligent infliction of emotional distress, a plaintiff must allege facts showing that: (1) the defendant negligently breached a duty owed to the plaintiff; Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 341 (1978); Urban v. Hartford Gas Co., 139 Conn. 301,304-5 (1952); and (2) "the defendant should have realized that CT Page 71 its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Barrett v. Danbury Hospital,232 Conn. 242, 260 (1995); Montinieri v. Southern New EnglandTelephone Co., supra, 345; Urban v. Hartford Gas Co., supra, 307.
In the present case, the plaintiffs have attempted to plead a prima facie case of negligent infliction of emotional distress under the essential elements outlined in Barrett, Montinieri andUrban, supra. In the present case, it must be determined whether, for the purposes of a motion to strike, the parents of a deceased teenager who was allegedly negligently treated by ambulance personnel may assert a cause of action for negligent infliction of emotional distress for themselves. Quite simply, the plaintiffs have not properly pleaded such a claim for themselves. As a matter of law, they have not alleged sufficient facts to demonstrate that the defendant EMTs owed them a duty.
Negligence is defined as a breach of a legal duty. Urban v.Hartford Gas Co., supra, 139 Conn. 304. "Where there is no legal duty, there can be no actionable negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence." Neal v. Shiels, Inc., 166 Conn. 3, 12
(1974). The existence of a duty is a question of law. Santopietrov. New Haven, 239 Conn. 207, 226 (1996). That question is whether or not a plaintiff has properly alleged that a duty was owed.Shore v. Stonington, 187 Conn. 147, 151 (1982).
Therefore, in the present case, the first hurdle to be satisfied is whether or not, under the facts recited in the complaint, the plaintiff has sufficiently alleged facts showing that the defendant EMTs owed a duty to the plaintiff parents. A duty may arise from a contract, a statute, or circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm was likely to result from his act or failure to act. Coburn v. Lenox Homes, Inc.,186 Conn. 370, 375 (1982).
In count eight, the plaintiffs incorporate all the allegations contained in counts one through seven, as summarized above, and allege that "[t]he defendants engaged in negligent conduct which violated a duty of care towards the teenage decedent's parents, Mustafa and Fahmiea Shaham." They, to reiterate, rely on Doe v. Cuomo, supra, in which the court CT Page 72 allowed the parents of a minor child who was sexually assaulted to maintain a claim of negligent infliction of emotional distress as to themselves against the assailant.
The allegations in the present case are clearly distinguishable from the facts in Doe. In Doe, the plaintiff parents alleged that their minor daughter was a guest in the defendant's home and that the plaintiff parents had entrusted her to the defendant's care. Doe v. Cuomo, supra, 223. The court's finding that the defendant caretaker owed a duty to the plaintiff parents rested in the court's determination that an implied contract existed between the parties containing the condition that one entrusted with the care of a child will not assault the child. In making this determination, the court relied especially on the alleged relationship between the plaintiffs and the defendant, and the special circumstances surrounding care of a minor child.
In the present case, the plaintiffs allege that the defendant EMTs owed a duty toward the plaintiff parents. However, this allegation constitutes merely a legal conclusion, and that nowhere in the complaint is there a factual predicate supporting this conclusion. Unlike the parents in Doe, the plaintiffs in the present case do not allege facts showing that they entrusted their son to the care of the defendant EMTs. In fact, the facts in the complaint show that the plaintiffs were not even aware of the EMTs involvement with or treatment of their son. They allege instead that they called the police, and that the police took their son to the police station and then called in the defendant EMTs.[3] No facts demonstrate that any relationship existed between themselves and the defendant EMTs giving rise to a legal duty.
In light of the foregoing, the plaintiffs, to summarize, have not alleged facts demonstrating that, as a matter of law, a duty existed between the defendant EMTs and the plaintiff parents, and therefore, have not sufficiently plead one of the essential elements to state a claim for negligent infliction of emotional distress. The motion to strike count eight is, accordingly, granted.
Therefore, the motion to reargue/reconsider the original motion to strike is granted and the relief sought therein is denied as to both counts five and eight. CT Page 73
Moraghan, J.