FLORENCE A. CIARELLI *v.* COMMERCIAL UNION INSURANCE COMPANIES
(15165)

BORDEN, NORCOTT, KATZ and PALMER, Js.[1]

Argued June 1—decision released August 8, 1995

---

[1] After oral argument in this case, Justice Callahan recused himself and the parties agreed to have this appeal decided by a panel of this court consisting of the four remaining Justices who had heard the appeal.

*Lori Welch-Rubin*, with whom was *Douglas J. Apicella*, for the appellant (plaintiff).

*Frederick L. Murolo*, with whom, on the brief, was *Mark T. Gould*, for the appellee (defendant).

BORDEN, J. The dispositive issue in this appeal is whether, in the case of an accident involving only one tortfeasor vehicle, an injured party is required to exhaust the liability limits of the insurance policies of both the owner and the operator of that vehicle in order to trigger underinsured motorist benefits. The plaintiff, Florence A. Ciarelli, appeals from the judgment of the trial court confirming an arbitration panel's denial of underinsured motorist benefits that the plaintiff sought pursuant to her insurance policy with the defendant, the Commercial Union Insurance Companies. The trial court concluded that the plaintiff had failed to trigger her underinsured motorist coverage because she had failed to exhaust the limit of an insurance policy covering the operator of the underinsured motor vehicle. We affirm the judgment of the trial court.

The facts underlying the plaintiff's claim are as follows. A vehicle (Cifarelli vehicle) owned by Ralph Cifarelli (owner) and operated by Richard Rodriguez (operator) crossed the center line of Foxon Boulevard in New Haven and struck the vehicle being operated by the plaintiff. The operator was cited for failure to operate his motor vehicle in the proper lane, and liability was stipulated. The Cifarelli vehicle was insured by Patriot General Insurance Company (Patriot General) under a policy providing liability coverage of $20,000 per person, $40,000 per accident. The plain-

tiff settled her claim with Patriot General for its per person limit of $20,000, thereby exhausting that policy. The plaintiff thereafter executed a general release of both the owner and the operator of the Cifarelli vehicle. At the time of the accident, the operator was insured for liability coverage through ITT Hartford (ITT).[2] The plaintiff did not attempt to collect against this policy.

The plaintiff subsequently filed a claim for underinsured motorist benefits against her own insurance carrier, the defendant. A three person arbitration panel, with one arbitrator dissenting, determined that, pursuant to *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 571 A.2d 104 (1990), the plaintiff was not entitled to benefits because she had failed to exhaust the limits of one of the insurance policies applicable to the underinsured vehicle, namely, the ITT policy. The dissenting arbitrator argued that, pursuant to *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 603 A.2d 385 (1992), the plaintiff was required to exhaust the insurance coverage of only one tortfeasor. He argued that the vehicle owner was a tortfeasor, that the plaintiff had exhausted the policy limit of the vehicle owner's insurance, and, therefore, that the plaintiff was not required to exhaust the insurance coverage of the vehicle operator.

The plaintiff applied to the trial court to vacate the award, echoing the assertions of the dissenting arbitrator. The trial court concluded that the vehicle owner was not a tortfeasor within the meaning of *Wheeler*, denied the application to vacate and confirmed the award of the arbitrators. This appeal followed.[3]

---

[2] In the underlying proceedings, the policy held by the operator was also referred to as the Twin City Fire Insurance Company policy.

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The plaintiff claims that: (1) *General Accident Ins. Co.* v. *Wheeler*, supra, 221 Conn. 206, requires the exhaustion of the insurance policy of only one tortfeasor, and in this case the exhaustion of the owner's liability insurance was sufficient to trigger underinsured motorist coverage; (2) the language of the plaintiff's underinsured motorist policy required the exhaustion of the owner's or the operator's insurance policy, but not both; and (3) the operator's insurance policy was not applicable because his vehicle had no connection to the accident that caused the plaintiff's loss.[4] We conclude that the trial court correctly determined that the plaintiff had not triggered her underinsured motorist coverage.

The plaintiff first claims that the trial court improperly determined that she had failed to exhaust the liability coverage applicable to the Cifarelli vehicle. The trial court determined that General Statutes § 38a-336 (b) required the plaintiff to exhaust the policy limits of both the owner and the operator of the Cifarelli vehicle. The plaintiff argues that she was required to exhaust only the liability policy limit of either the owner or the operator and, because she had exhausted the owner's policy, she had triggered her underinsured motorist coverage. We are unpersuaded.

Section 38a-336 (b) establishes the exhaustion requirement for underinsured motorist coverage. This subsection provides that an insurance company is obligated to make payment to its insured "after the limits of liability under *all* bodily injury liability *bonds* or insurance *policies* applicable at the time of the accident have been exhausted by payment of judgments or settlements . . . ." (Empha-

---

[4] The plaintiff also claims that the arbitration panel majority improperly concluded that the parties had stipulated that a no-fault credit of $1666.66 was due the defendant. Because we conclude that the trial court properly determined that the plaintiff had not triggered underinsured motorist coverage, the credit issue is irrelevant and we do not address it.

sis added.) The word "all" and the plural words "bonds" and "policies" found in § 38a-336 (b) would be rendered meaningless if not read to require exhaustion of all the policies applicable to the underinsured vehicle at the time of the accident. The language of the statute clearly anticipates circumstances under which coverage by more than one liability policy will be available, and a case such as this, in which there is a policy covering the automobile, namely, the Patriot General policy, and a different policy covering the liability of the operator, namely, the ITT policy,[5] is the paradigm that the statute contemplates. In *Continental Ins. Co.* v. *Cebe-Habersky*, supra, 214 Conn. 213, we concluded that a single policy is exhausted only when the limit of coverage actually has been paid to the claimant. Accordingly, if the plaintiff did not receive payment of the full policy limits of the applicable policies, namely, the owner's policy *and* the operator's policy, she cannot prevail on a claim under her underinsured motorist policy.

Indeed, § 38a-336 (e) defines an "underinsured motor vehicle" as "a motor vehicle with respect to which the *sum of the limits of liability under all bodily injury liability bonds and insurance policies* applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section." Accordingly, in order to reach the

---

[5] At oral argument in this court, the plaintiff suggested that the ITT policy might not have provided coverage for the operator while operating the Cifarelli vehicle. This issue was not briefed and the liability portion of the ITT policy was not filed with this court. The defendant asserts that the ITT policy covered the operator for the operation of any vehicle. We note that the arbitrators' majority opinion and the trial court's memorandum both presume such coverage, and in the absence of any evidence offered to the contrary, and with the understanding that the plaintiff never attempted to collect against that policy, we presume that the arbitrators and the trial court properly reviewed the ITT policy and concluded that coverage existed.

issue of coverage under subsection (b), a determination must be made that the sum of all the applicable policies provides less coverage than that provided for under the plaintiff's uninsured motorist policy. "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. . . . *State* v. *Hinton*, 227 Conn. 301, 320, 630 A.2d 593 (1993)." (Internal quotation marks omitted.) *Elliot* v. *Sears, Roebuck & Co.*, 229 Conn. 500, 515, 642 A.2d 709 (1994). Common sense dictates that the legislature did not intend that the calculation as to whether a vehicle is underinsured encompasses all the applicable policies and, at the same time, intend the exhaustion requirement to mandate that the plaintiff exhaust only one policy of his choosing.

The plaintiff claims that, notwithstanding the language of § 38a-336 (b), she is not required to exhaust all the policies applicable to the Cifarelli vehicle at the time of the accident. Rather, she argues that she was required to exhaust the policy limit of only one tortfeasor, in this case either the owner or the operator of the Cifarelli vehicle.

The plaintiff's claim relies upon our holding in *General Accident Ins. Co.* v. *Wheeler*, supra, 221 Conn. 211, in which we determined that, in order to trigger underinsured motorist coverage, "the insured merely needs to exhaust the liability policies of one tortfeasor." The plaintiff claims that pursuant to *Wheeler*, her exhaustion of the vehicle owner's insurance was sufficient to trigger her underinsured motorist coverage. The plaintiff's reliance on our holding in *Wheeler* is misplaced.

In *Wheeler*, the sole issue was "whether an insured, where there is more than one tortfeasor responsible for the accident, may recover under his or her underin-

sured motorist policy before first exhausting the liability insurance policies of all the tortfeasors." Id., 207. We concluded "that an insured is required to exhaust the liability insurance coverage of only one tortfeasor in order to recover underinsured benefits." Id. In *Wheeler*, the claimant had been injured when he had been pinned between a parked vehicle and a moving vehicle. The limit of the only liability policy applicable to the moving vehicle had been paid to the claimant pursuant to a settlement agreement. The claimant also, however, had brought a suit which was pending at the time of our decision in *Wheeler* against the city of Danbury and two of its police officers. In that suit, the claimant had alleged that the negligence of the police officers was a proximate cause of the claimant's injuries, because they had positioned their unattended police vehicle in such a manner that its headlights had blinded the driver of the moving vehicle. Id., 207–208. We determined that the claimant could pursue underinsured motorist benefits without awaiting the result of that lawsuit. Id., 211. Our holding in *Wheeler*, therefore, concerned multiple tort claims arising out of an accident involving more than one potentially at fault vehicle.

We did not envision the application of either our holding or our language in *Wheeler* to a situation concerning a single tort claim involving a single at fault vehicle, where the operator and owner of that vehicle each had a liability policy applicable to the accident at issue. Despite our language in *Wheeler*, whether the owner is a "tortfeasor" is irrelevant to whether his policy covered the incident at issue,[6] because that policy covered not only the negligent operation of the vehicle by the owner, but the negligent operation by others as well, including the operator.[7]

---

[6] Accordingly, we need not determine whether the owner of the at fault vehicle was a "tortfeasor" under the circumstances of this case.

[7] The Patriot General policy was not included in the record submitted to the court. The majority of the arbitrators found, however, that "[the

The sole tort giving rise to the plaintiff's claim in this case was the negligence of the operator of the vehicle. In *Wheeler*, by contrast, our holding was that the insured need exhaust only the insurance policy applicable to the one underinsured vehicle, even when the insured may have had other opportunities for recovery. We did not intend *Wheeler* to relieve the burden on the plaintiff to exhaust the limits of all policies applicable to the underinsured vehicle at the time of the accident, simply because each policy was held by a different person, each of whom might be characterized as a tortfeasor.[8]

The plaintiff next claims that the express terms of her policy require only that she exhaust the insurance coverage of either the owner or the operator of the tortfeasor vehicle before turning to her own underinsured motorist coverage. The plaintiff's claim revolves around the meaning of a policy provision that states: "We will pay compensatory damages which an insured is legally entitled to recover from the owner *or* operator of an uninsured motor vehicle because of bodily injury: 1. Sus-

---

operator] had liability coverage for his at fault operation of the Cifarelli vehicle under the provisions of the Patriot General Insurance Company's policy insuring [the owner's] vehicle and [the operator's] operation of said vehicle for limits of $20,000.00 which limits have been paid to the claimant." The plaintiff has not challenged this finding.

[8] Indeed, we note that the briefs in *Wheeler* support this conclusion. The insured stated in his brief: "General Accident argues, as it did in the trial court, that the plural use of the words 'judgments and settlements' and 'bonds and insurance policies' utilized in [§ 38a-336 (b)] supports its interpretation that [§ 38a-336 (b)] applies to all tortfeasors. Such reliance is misplaced because it ignores the common situation where more than one party/defendant (e.g., owner, operator, employee, agent, lessee, etc.) may be held liable for the negligence in the operation of a single motor vehicle and that a single vehicle may be insured under multiple insurance policies. . . . Thus, *the plural use of the words judgments and settlements is entirely consistent with the position that only the policies applicable to a single vehicle must be exhausted in order to trigger underinsured motorist coverage.*" (Emphasis added.) *General Accident Ins. Co. v. Wheeler*, Conn. Supreme Court Records & Briefs, Oct. Term, 1991, Defendants' Brief pp. 6–7.

tained by an insured; and 2. Caused by an accident."
(Emphasis added.) The plaintiff claims that the use of
the disjunctive "or" means that underinsured motor-
ist coverage is triggered by the exhaustion of the lia-
bility insurance of either the owner or the operator.

We are unpersuaded that this policy provision can
be read to have the meaning ascribed to it by the plain-
tiff. This provision is not an exhaustion requirement,
but rather is a statement of liability coverage. Exhaus-
tion is a matter of statutory policy. Although an insur-
ance company may provide greater benefits than those
required by statute by relaxing the underinsured motor-
ist exhaustion requirement; see Regs., Conn. State
Agencies § 38a-334-3;[9] we will not ordinarily read a
policy to provide such a deviation from the statutory
scheme in the absence of a reasonably expressed or
implied intention to do so. In this case, the plaintiff does
not point to any provision in the contract, nor have we
found one, that specifies an exhaustion requirement for
underinsured motorist coverage. The exhaustion require-
ment of § 38a-336 (b) is therefore incorporated into the
plaintiff's insurance contract.

Finally, the plaintiff, relying on *Travelers Ins. Co.*
v. *Kulla*, 216 Conn. 390, 579 A.2d 525 (1990), claims
that because the operator's vehicle was totally unrelated
to the accident, the liability insurance policy covering
the operator's vehicle cannot be considered to meet the
definition of an "underinsured motor vehicle" pursuant
to § 38a-336 (e). Because § 38a-336 (b) provides a sub-

---

[9] Section 38a-334-3, formerly § 38-175a-3, of the Regulations of Connect-
icut State Agencies provides: "LANGUAGE OF POLICIES. PRESUMPTION RE
COVERAGE

"The provisions herein required need not be stated in the language or
form of these regulations, but the coverage afforded shall be of equal *or
greater* benefit to the insured. Policies affording a coverage to which these
regulations apply shall be deemed to afford insurance under such cover-
age at least equal to that required by these regulations." (Emphasis added.)

stantially similar identical definition as to which policies are applicable at the time of the accident, she claims, the operator's policy was not applicable to the accident. We disagree.

The plaintiff is correct that, in accordance with our holding in *Travelers Ins. Co.* v. *Kulla*, supra, 216 Conn. 390, the operator's vehicle, which was not involved in the accident, cannot be considered to be the underinsured motor vehicle for the purposes of accessing the plaintiff's underinsured motorist coverage. The plaintiff, however, misreads *Kulla* to provide that, for purposes of determining whether exhaustion has been accomplished under § 38a-336 (b), an insurance policy covering a motor vehicle not involved in an accident is not available to provide liability coverage for the owner of that vehicle who is operating a different vehicle, in this case the Cifarelli vehicle, that *was* involved in the accident. This was not our holding in *Kulla.*

Our conclusion in *Kulla* was simply that, in determining whether underinsured motorist coverage is triggered, it is the sum of the policy limits applicable to the vehicle actually involved in the accident that must be considered. In that case, the insured argued that the operator's vehicle was the underinsured vehicle, even though that vehicle was causally unrelated to the accident in question. The insured did not claim that, and we did not consider whether, he was not required to exhaust the limits of all policies covering the vehicle that was involved in the accident. Indeed, it is notable that in *Kulla*, both the owner's and the operator's insurance policies, both of which were applicable to the accident vehicle at the time of the accident, were exhausted before the claimant pursued his underinsured motorist coverage. Id., 393.

The judgment is affirmed.

In this opinion the other justices concurred.