[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff, Ethel Orkney, filed a single count complaint on December 4, 1996, claiming that the defendant Hanover Insurance Company (Hanover) wrongfully denied her underinsured motorist coverage. The defendant has moved for summary judgment claiming that the plaintiff failed to exhaust fully all the liability coverages available and applicable to her. Specifically, the defendant contends that the plaintiff failed to exhaust the liability coverage of the self-insured Alamo-Rent-A-Car Company (Alamo) with respect to the putative underinsured vehicle.
On August 19, 1994, the plaintiff, while a passenger in a car owned and operated by Norman Nicholson, and insured by Hanover, was allegedly injured when the vehicle was hit from behind by another motor vehicle. The motor vehicle that collided with the Nicholson vehicle was being operated by Sachito Sekiguchi. The Sekiguchi vehicle was owned by Alamo. On or about September 17, 1996, the plaintiff resolved her claims against Alamo and Sekiguchi.
The plaintiff claims that she is covered under both her own and Nicholson's underinsured motorist policies, and that she is entitled to recover further compensation, for the full extent of her injuries, from the defendant as a result of the accident on August 19, 1994.
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). "The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Bruttomesso v. N.E. Conn. Sexual Assault Crisis Serv.,242 Conn. 1, 5, 698 A.2d 795 (1997).
"[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can be warrantably CT Page 5142 inferred." United Oil Co. v. Urban Development Commission,158 Conn. 364, 378-79, 260 A.2d 596 (1969).
"Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v.Kissner, 229 Conn. 213, 217, 640 A.2d 89 (1994). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." Maffucci v. Royal ParkLimited Partnership, 243 Conn. 552, 554, ___ A.2d ___ (1998). When a party moves for summary judgment "and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, 231 Conn. 756, 795, 653 A.2d 122 (1995).
In the present case, the defendant movant has attached numerous exhibits, such as the Alamo rental lease agreement with Sekiguchi (Exhibit 1), Alamo's application for self-insurance (Exhibit 2), and Alamo's auto liability coverage statement (Exhibit 2, Attachment 1), in support of its motion for summary judgment. The plaintiff, however, has not offered any evidence in opposition to the movant's claim, and has cited only two cases in its opposition brief. Furthermore, the cases cited by the plaintiff do not offer any propositions which counter the arguments raised by the defendant.
The defendant argues in its memorandum of law that "in order to trigger an underinsured motorist claim there must be exhaustion of all available liability protection." The defendant further argues that "the exhaustion that is required is both of the owner's and operator's liability insurance applicable to the putative underinsured vehicle." (Emphasis in original.) Thus, as the plaintiff has only exhausted the operator Sekiguchi's liability insurance, and not the liability insurance of Alamo as owner of the motor vehicle, she has not exhausted "all available liability protection."
Alternatively, the plaintiff argues in her opposition to the defendant's motion for summary judgment that she has exhausted all of the available insurance coverage as "[t]he vehicle Sachito Sekiguchi was operating [and] owned by Alamo-Rent-A-Car was self insured by Alamo to the 20/40 minimum coverage limits required by Connecticut Law. The plaintiff here exhausted those limits and CT Page 5143 thus triggered her underinsured motorist claim against the defendant."
"[General Statutes] [s]ection 38a-336 (b) establishes the exhaustion requirement for underinsured motorist coverage."Ciarelli v. Commercial Union Ins. Cos., 234 Conn. 807, 810,663 A.2d 377 (1995). This subsection "provides that an insurance company is obligated to make payment to its insured after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements." (Internal quotation marks omitted; emphasis in original.) Id. "The word `all' and the plural words `bonds' and `policies' found in §38a-336 (b) would be rendered meaningless if not read to require exhaustion of all the policies applicable to the underinsured vehicle at the time of the accident." Id., 11.
In Ciarelli, a motor vehicle owned by one individual and permissibly operated by another individual crossed the center line of the highway and struck the plaintiff's oncoming vehicle. There, the plaintiff exhausted the liability policy of only the owner, but not the operator, of the purportedly underinsured motor vehicle. The plaintiff then filed a claim for underinsured motorist coverage from the defendant. The defendant denied coverage and moved for summary judgment claiming that the plaintiff had failed to exhaust the operator's liability coverage. The trial court ruled in favor of the defendant, and the Supreme Court affirmed the decision.
Similarly, in the present case, the plaintiff was required, not only to exhaust the liability insurance coverage of the lessee/operator Sekiguchi, but also that of the lessor/owner Alamo prior to filing a claim for underinsured motorist coverage.
Further, whether the owner is considered an additional tortfeasor with respect to the accident does not affect the plaintiff's obligation to exhaust fully all the applicable liability coverage covering the motor vehicle. "We did not intendWheeler, [General Accident Ins. Co. v. Wheeler, 221 Conn. 206,603 A.2d 385 (1992)] to relieve the burden on the plaintiff to exhaust the limits of all policies applicable to the underinsured vehicle at the time of the accident, simply because each policy was held by a different person." Ciarelli v. Commercial UnionIns. Cos., supra, 234 Conn. 810. CT Page 5144
"In Wheeler, the sole issue was whether an insured, where there is more than one tortfeasor responsible for the accident, may recover under his underinsured motorist policy before first exhausting the liability insurance policies of all the tortfeasors." Ciarelli v. Commercial Union Ins. Cos., supra,234 Conn. 813. The court "concluded that an insured is required to exhaust the liability insurance coverage of only one tortfeasor in order to recover underinsured benefits." Id. The holding inWheeler, however, "concerned multiple tort claims arising out of an accident involving more than one potentially at faultvehicle." (Emphasis added.) Id. In the present case, there was only one potentially at fault vehicle, namely the vehicle operated by Sekiguchi.
The Connecticut Supreme Court "did not envision the application of either [the] holding or [the] language in Wheeler
to a situation concerning a single tort claim involving a single at fault vehicle, where the operator and owner of that vehicle each had a liability policy applicable to the accident at issue."Ciarelli v. Commercial Union Ins. Cos., supra, 234 Conn. 813. Therefore, "[d]espite our language in Wheeler, whether the owner is a `tortfeasor' is irrelevant to whether his policy covered the incident at issue, because that policy covered not only the negligent operation of the vehicle by the owner, but the negligent operation by others as well, including the operator. " (Emphasis added.) Id., 813. Thus, "if [a] plaintiff [does] not receive payment of the full policy limits of the applicable policies, namely, the owner's policy and the operator's policy, she cannot prevail on a claim under her underinsured motorist policy." (Emphasis added.) Id., 811.
It is undisputed that Alamo owns the motor vehicle that was leased to Sekiguchi, and that Sekiguchi was the operator of the motor vehicle involved in the accident. (PI.'s Cmplt pp. 1-2.) The parties also agree that the defendant was self-insured, and that Sekiguchi was provided with liability coverage of 20/40 by Alamo when the motor vehicle was leased.[1] As such, the salient facts are not in dispute.
Unfortunately, the disposition of this matter is not as straightforward as it should be because the parties are arguing two completely separate legal propositions. Furthermore, the arguments that the plaintiff makes in her opposition memorandum, contradict the allegations contained within her complaint. CT Page 5145
The plaintiff argues that "[o]bviously [Alamo's] self-insurance . . . means to the minimum coverage required by law and that minimum coverage pertains to each vehicle Alamo leases." Therefore, once the $20,000 was paid, the liability coverage of both the owner and the operator of the underinsured motor vehicle was exhausted. The plaintiff, however, cites no legal authority for this proposition. The plaintiff does not distinguish between Alamo's program of self-insurance and the liability coverage of 20/40, which Alamo extended to Sekiguchi; she treats them as one and the same.
Alternatively, the defendant argues that the liability coverage made available to Sekiguchi in the amount of $20,000 is entirely independent and separate from Alamo's program of self-insurance. Therefore, the plaintiff's failure to exhaust Alamo's liability coverage prevents her from making any claim for underinsured motorist benefits from the defendant insurer.
The plaintiff's argument fails on two separate grounds: (1) self-insurance policies are not limited to the statutory minimum 20/40, but instead extend to the ceiling established by the self-insurer, (see Exhibit 2, Alamo's self-insurance auto liability coverage extends to 1 million dollars; Exhibit 2, Attachment 1, Alamo's continental Insurance Co., Policy SRE 9561211, 10/1/91 — 10/1/94 which provides $4.0 million CSL in excess of $1.0 million) and (2) the liability coverage of Alamo and Sekiguchi were separate and distinct policies both in need of exhaustion before the plaintiff could pursue a claim for underinsured motorist coverage. See Exhibit 1; Exhibit 2; Exhibit 2, Attachment 1.
The plaintiff alleges in her complaint that "[a]t the time of the collision neither Sachito Sekiguchi or Alamo Rent A Car, Inc. was adequately insured to fully compensate the plaintiff for her injuries, losses and damages." The foregoing proposition is not accurate as a self-insurer is liable to pay, pursuant to General Statutes § 14-129 (c), "any judgment" up to its self-insurance ceiling, in this case one million dollars. To qualify as a self-insurer, the applicant's financial condition must be disclosed to the insurance commissioner. See Exhibit 2; General Statutes § 14-129 (b); General Statutes § 38a-371 (c) (3). The purpose of this disclosure is to demonstrate that the applicant has the financial ability to render certain the payments of automobile judgments. General Statutes § 14-129
(b); Exhibit 2. In the present case, Alamo as a self-insurer, had the ability to compensate the plaintiff up to one million dollars CT Page 5146 under § 14-129 (b) for any independent liability it may have incurred pursuant to General Statutes § 14-154a.[2] See also Exhibit 2, Attachment 1.
Secondly, the plaintiff alleges in her complaint that "[o]n or about September 17, 1996 the plaintiff resolved her claim against Sekiguchi and Alamo Rent A Car, Inc. to the full extent of the applicable limits of the liability policies insuring them." (Emphasis added.) This allegation recognizes that two separate policies of liability coverage existed, one for Sekiguchi, and one for Alamo. The plaintiff's argument contained in her opposition memorandum does not distinguish, however, between the 20/40 liability coverage extended to the lessee Sekiguchi and Alamo's program of self-insurance as owner of the motor vehicle. The plaintiff states in her opposition memorandum that "the vehicle . . . was self insured by Alamo to the 20/40 minimum coverage limits required by Connecticut law. The plaintiff here exhausted those limits and thus triggered her underinsured motorist claim against the defendant." Again, the plaintiff only exhausted, despite what she alleges in her complaint and argues in her memorandum, the 20/40 policy of the lessee Sekiguchi, not the self-insurance coverage of Alamo.
The plaintiff's interpretation of the law necessarily implies that the 20/40 policy extended to Sekiguchi was in reality, only liability coverage for Alamo under its self-insurance program, and that Sekiguchi did not have any coverage at all. Yet, the lease agreement between Alamo and Sekiguchi provides for 20/40 liability coverage for Sekiguchi as the operator of the leased motor vehicle. See Exhibit 1. That coverage is completely separate and apart from Alamo's own self-insurance coverage as the owner of the leased vehicle. See generally Ciarelli v.Commercial Union Ins. Co., supra; Exhibit 1; Exhibit 2.
The present matter is analogous to that of Ciarelli, and as such, Ciarelli controls the disposition of this case. In both cases, the owner of the vehicle was not the operator of the vehicle when the accident occurred, and the accident only involved one at fault vehicle. Moreover, in both cases, the owner and the operator of the motor vehicle had separate liability coverages. In the present matter, the owner's liability coverage with respect to the vehicle was a self-insurance liability program up to the ceiling of one million dollars, while the operator Sekiguchi had a 20/40 liability policy. See Exhibit 1; Exhibit 2, Attachment 1. The plaintiff was required under CT Page 5147Ciarelli, to exhaust both the owner/lessor Alamo's liability coverage, as well as the operator/lessee Sekiguchi's coverage, before she could claim underinsured motorist coverage from the defendant.
Accordingly, the defendant's motion for summary judgment is granted.
Martin, J.