ANTHONY J. SCALISE *v.* AMERICAN EMPLOYERS
INSURANCE COMPANY
(AC 20928)

Foti, Dranginis and Flynn, Js.

(*One judge dissenting*)

Argued October 23, 2001—officially released January 29, 2002

*Michael A. Catalano*, for the appellant (plaintiff).

*Frederick L. Murolo*, with whom, on the brief, were *Karen T. Gerber* and *Marc J. Ubaldi*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Anthony J. Scalise, appeals from the judgment of the trial court denying his application for an order to compel the defendant, American Employers Insurance Company, to proceed with arbitration of his underinsured motorist claim as set forth in his automobile insurance policy with the defendant. On appeal, the plaintiff argues that the court improperly concluded that he failed to make a written demand for arbitration before the running of the statute of limitations, General Statutes § 52-576. We affirm the judgment of the trial court.

The relevant facts underlying the plaintiff's appeal are not disputed. The defendant issued an automobile insurance policy to the plaintiff that included an underinsured motorist provision. That provision provided that in the event that the defendant and the plaintiff did not agree as to either an insured's entitlement to damages or the amount of such damages, the insured may make a written demand for arbitration. Neither the underinsured motorist provision nor the policy as a whole adopted a specific time limitation for submitting an arbitration demand. On April 1, 1989, the plaintiff was involved in an automobile accident caused by the negligence of another operator. USAA General Indemnity Company (General Indemnity) insured the operator of the other automobile.

On April 10, 1991, General Indemnity offered to settle the plaintiff's claim for damages against its insured for $20,000, the policy limit. On April 18, 1991, the plaintiff signed a release in favor of General Indemnity's insured. On April 23, 1991, General Indemnity issued an uncertified check to the plaintiff for $20,000. On April 26, 1991, the plaintiff's counsel received and deposited the check on the plaintiff's behalf.

In a letter dated April 29, 1997, the plaintiff made a demand against the defendant to arbitrate his still pending underinsured motorist claim. The defendant refused. On May 2, 1997, the plaintiff filed an application in the Superior Court for an order to compel the defendant to proceed with arbitration.[1] The defendant thereafter pleaded, as a special defense, that the statute of limitations on the plaintiff's claim had expired and that this fact precluded the plaintiff's demand for arbitra-

---

[1] General Statutes § 52-410 (a) provides in relevant part: "A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement. . . ."

tion. The court conducted an evidentiary hearing and, on May 24, 2000, issued a memorandum of decision denying the plaintiff's application. The court held that the statute of limitations began to run on April 26, 1991, the date on which the plaintiff's attorney received the check from General Indemnity. The court further reasoned that because the plaintiff did not demand arbitration until April 29, 1997, his demand was barred by the statute of limitations.

This appeal presents an issue concerning the interaction of two statutes, one dealing with an insurer's obligation to make underinsured motorist payments to its insured and another that establishes the time frame in which an insured may bring an action to recover such payments. "Statutory interpretation is a matter of law over which this court's review is plenary." (Internal quotation marks omitted.) *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 302, 780 A.2d 916 (2001). Likewise, "[t]he question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

Because the plaintiff's policy was silent as to the time period in which he could exercise his right to demand arbitration of his underinsured motorist claim, the statute of limitations set forth in § 52-576 applied to his right to do so. See *Coelho* v. *ITT Hartford*, 251 Conn. 106, 107, 752 A.2d 1063 (1999) (noting that "in the absence of a contrary provision in the claimant's motor vehicle policy, an action for underinsured benefits can be brought at any time prior to the expiration of the time limitation of that statute"); *Wynn* v. *Metropolitan Property & Casualty Ins. Co.*, 30 Conn. App. 803, 807, 623 A.2d 66, aff'd, 228 Conn. 436, 635 A.2d 814 (1993). Section 52-576 (a) provides that "[n]o action for an

account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section." Our Supreme Court has explained that "because the statute of limitations under § 52-576 is based on the accrual of a cause of action for underinsured motorist benefits, and accrual is dependent upon enforcement, the time for commencing such an action begins to run on the date of exhaustion of the tortfeasor's liability limits." *Coelho* v. *ITT Hartford*, supra, 112.

General Statutes § 38a-336 (b) provides in relevant part that "[a]n insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements . . . ." The purpose underlying underinsured motorist coverage is to protect a victim from "suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." (Internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 88, 743 A.2d 156 (1999). The plaintiff's underinsured motorist coverage became necessary when the amount of his claimed damages from the accident exceeded General Indemnity's settlement payment in the amount of its insured's policy limit. The outcome of this appeal turns on our resolution of the issue of when General Indemnity exhausted by payment its insured's policy limit because the plaintiff could not have successfully maintained a cause of action against the defendant until that time. See *Wynn* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 30 Conn. App. 807–808.

The plaintiff argues that General Indemnity did not exhaust its insured's liability limit until it "satisfied" its

settlement with the plaintiff. He posits that the term "exhaustion by payment" means that "the check must be honored, it must be paid by the bank on which it was drawn." His argument rests on the premise that he could not have withdrawn the deposited funds from General Indemnity's check from his account on the date on which he received and deposited the settlement check, April 26, 1991. The plaintiff refers us to the fact that state law defined the latest date on which a bank must make deposited funds available for withdrawal. See General Statutes (Rev. to 1991) § 36-9v, now § 36a-302. It follows, he argues, that because he deposited General Indemnity's check on Friday, April 26, 1991, the *earliest* that the check could have cleared and the funds could have been available for his withdrawal would have been Monday, April 29, 1991.[2] Applying that analysis, the plaintiff reasons that the six year statute of limitations set forth in § 52-576 did not bar his April 29, 1997 demand for arbitration.

Application of § 52-576 requires us to determine the precise time at which General Indemnity "exhausted by payment" its settlement with the plaintiff. We begin our analysis by interpreting that statutory term to determine when exhaustion by payment occurs if payment is in the form of an uncertified check. That is an issue that no appellate court in this state has yet resolved. We undertake that exercise mindful that our interpretation should be faithful to the legislative intent behind the statute's enactment and give effect to that legislative action. *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 275, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). As in any exercise of statutory interpreta-

---

[2] The plaintiff did not submit evidence to the trial court as to when exactly the check cleared. He argues that this is of no consequence because April 29, 1991, was the *earliest* date on which the check could have cleared, thereby enabling him to draw upon the deposited funds, and that if the court had used that date as the date of payment it also would have had to conclude that his demand for arbitration was timely.

tion, we accord the words and phrases of a statute their commonly approved usage and their ordinary meaning, mindful that legislative intent is usually apparent in the words that the legislature used. Id.; General Statutes § 1-1 (a).

The legislature did not define exactly when exhaustion by payment occurs. "Exhaust" is defined as "to empty . . . to consume entirely." Merriam-Webster's Collegiate Dictionary (10th Ed. 1999). "Payment" is defined as "the act of paying . . . something that is paid." Id. The word is also defined as "[a] discharge in money or its equivalent of an obligation or debt owing by one person to another, and is made by debtor's delivery to creditor of money or some other valuable thing, and creditor's receipt thereof, for purpose of extinguishing debt." Black's Law Dictionary (6th Ed. 1990). Our Supreme Court has stated in a similar context that a policy is exhausted "only when the limit of coverage actually has been paid to the claimant." *Ciarelli* v. *Commercial Union Ins. Cos.*, 234 Conn. 807, 811, 663 A.2d 377 (1995).

Those definitions do not shed light on the issue of when payment occurs if a party makes payment, as here, by delivering an uncertified check. Although the payment by check in the present case was made for the purpose of settling an insurance claim, we are able to garner guidance from the analogous context of payment by check for the payment of an obligation or debt.

"[T]he giving of a draft by a debtor to his creditor does not discharge the debt itself until the draft is paid, it being a means adopted to enable the creditor to obtain payment of the debt and remaining, until honored or paid, *but evidence of the indebtedness . . . .*" (Emphasis in original; internal quotation marks omitted.) *Huybrechts* v. *Huybrechts*, 4 Conn. App. 319, 321, 494 A.2d 593 (1985). In that light, we have recognized that the

delivery of a note or an uncertified check suspends an obligation to pay "until dishonor of the note [or uncertified check] or until [either] is paid." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *DaSilva,* 231 Conn. 441, 447, 650 A.2d 551 (1994); see also General Statutes (Rev. to 1991) § 42a-3-802 ("where an instrument is taken for an underlying obligation . . . the obligation is suspended pro tanto until the instrument is due or if it is payable upon demand until its presentment").

It is well settled, however, that a debtor's delivery of an uncertified check as payment for an obligation not only suspends his obligation to pay until such check is, upon its presentment, either honored or dishonored, but that once the check is honored, the obligation to pay no longer exists. Our legislature codified that principle in General Statutes § 42a-3-310 (b), which provides in relevant part: "[I]f a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and . . . [i]n the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check. . . ."[3]

It is not disputed that General Indemnity was free to satisfy its settlement by paying the plaintiff with a check, a customary practice. We also recognize that payment by check is ordinarily understood to constitute payment for an obligation as of the moment of delivery

---

[3] An uncertified check is a negotiable instrument. As such, its use is governed by the provisions of article III of Connecticut's Uniform Commercial Code, General Statutes § 42a-1-101 et seq. The provisions therein do not define when payment occurs if a note or an uncertified check is taken as payment for an obligation.

of the check, provided that the check is honored upon its presentment. "[W]here a check delivered to a creditor . . . is in fact paid in due course, the debt is discharged pro tanto, *as of the time at which the check was received* . . . . A check is . . . often referred to as conditional payment, the condition being its collectability from the bank on which it is drawn. On fulfillment of the condition by payment of the check on presentation, the payment, which was previously conditional, becomes absolute." (Emphasis added.) 70 C.J.S., Payment § 18 (1987); see also 60 Am. Jur. 2d, Payment § 18 (1987) ("time of payment of the obligation relates back to the time when the check was delivered to the obligee").

As one court explained, that rule recognizes the realities of modern day commerce and yields a sensible result, for "[i]f the check is dishonored on presentment to the drawee, no timely 'payment' has been made." *Duke* v. *Sun Oil Co.*, 320 F.2d 853, 862 (5th Cir. 1963).[4] Another court noted that if a party's act of delivering a check as payment for an obligation "is not the sending of money in discharge of the debt it is hard to figure out what a payment can be." (Internal quotation marks omitted.) *Staff Builders of Philadelphia, Inc.* v. *Koschitzki*, 989 F.2d 692, 694 (3d Cir. 1993). We find such authority to be persuasive. Accordingly, we hold that if an uncertified check is honored and paid on presentment, its conditional nature ends and it becomes absolute payment at that time. The date of the payment for the underlying obligation relates back to the date of the delivery of the check. We believe that this "conditional payment" rule is fair and that it reflects the common understanding of the practice of paying by check. By

[4] Our legislature intended the provisions of Connecticut's Uniform Commercial Code, General Statutes § 42a-1-101 et seq., to be construed liberally so as "to simplify, clarify and modernize the law governing commercial transactions . . . ." General Statutes § 42a-1-102 (2) (a).

interpreting § 38a-336 (b) harmoniously with that rule, we fulfill our duty of interpreting the statute to achieve a rational and sensible result. See *Interlude, Inc.* v. *Skurat,* 253 Conn. 531, 539, 754 A.2d 153 (2000).

Having reached that point in our analysis, we conclude that General Indemnity exhausted by payment its settlement with the plaintiff on April 26, 1991. Pursuant to § 38a-336 (b), the plaintiff could have maintained a cause of action against its insurer for underinsured motorist benefits on that date. The six year statute of limitations set forth in § 52-576 permitted the plaintiff to bring a claim against the defendant, if he so desired, within six years. The plaintiff did not do so. Instead, he filed his written demand for arbitration on April 29, 1997. Accordingly, the plaintiff's application for an order to compel the defendant to proceed with arbitration is barred.

The judgment is affirmed.

In this opinion DRANGINIS, J., concurred.

FLYNN, J., dissenting. I respectfully dissent from the opinion of the majority. I would reverse the decision of the trial court, remand with a rescript ordering it to determine when the tortfeasor's insurer's check cleared and was paid, and if paid within six years of the date of the demand for arbitration, ordering it to compel arbitration and allow what is, in my opinion, a timely claim to proceed to arbitration in the usual manner.

First, I note that the plaintiff's attorney deposited the check received in settlement of the plaintiff's third party claim for collection in his account on the day it was received after proper indorsement by his client. The contract statute of limitations, which all agree governs, provides in pertinent part that "[n]o action . . . on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." General Stat-

utes § 52-576 (a). The insurer's liability for underinsured benefits is covered by a policy provision found on page ten of the written contract at issue, under the heading "Endorsements." The policy states in pertinent part: "We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." See also General Statutes § 38a-336 (b). I agree with the plaintiff's contention that "payment" was not made, nor was the third party tortfeasor's policy "exhausted," until the check cleared.

The majority defines "payment" as " '[a] discharge in money or its equivalent of an obligation or debt owing . . . .' " Under Connecticut law, an uncertified check does not discharge the underlying obligation.[1] Our Supreme Court has stated that "the giving of a check by a debtor to his creditor does not discharge the debt until the check is paid." *Tuckel* v. *Jurovaty*, 141 Conn. 649, 651, 109 A.2d 262 (1954). In fact, the majority quotes *Huybrechts* v. *Huybrechts*, 4 Conn. App. 319, 321, 494 A.2d 593 (1985), for the same proposition: "[T]he giving of a draft by a debtor to his creditor *does not discharge the debt itself* until the draft is paid, it being a means adopted to enable the creditor to obtain payment . . . ." (Emphasis added; internal quotation marks omitted.) If the delivery of an uncertified check is a means for later obtaining payment, I do not understand how we arrive at the legal conclusion that payment has already been made upon its mere delivery. It is undisputed that the tortfeasor's insurer, USAA General Indemnity Company (General Indemnity), issued an uncertified check. The Uniform Commercial Code § 3-310, enacted in Connecticut under General Statutes § 42a-3-310 and also cited by the majority, covers the

---

[1] In this case, the underlying obligation of the tortfeasor's insurance was to pay the policy limits, which would thereby "enforce" them, triggering the accrual of the plaintiff's cause of action for statute of limitations purposes.

same territory: "[When] an uncertified check is taken for an obligation, the obligation is *suspended* to the same extent the obligation *would be* discharged if an amount of money equal to the amount [indicated on] the instrument were taken . . . ." (Emphasis added.) General Statutes § 42a-3-310 (b). The same provisions contrast the effects of a *certified* check. When a certified check is taken for an obligation, "the obligation *is discharged* to the same extent discharge would result if an amount of money equal to the amount [indicated on] the instrument were taken in payment of the obligation. . . ." (Emphasis added.) General Statutes § 42a-3-310 (a). Thus, the code provision plainly states that the obligation is not yet discharged simply by handing over an uncertified check. I do not understand how General Indemnity's obligations under policy limits are "*exhausted* by payment" within the meaning of the policy and § 38a-336 (b) when the obligation to pay has not been discharged. The majority seems to agree, stating that "payment" is "[a] *discharge* in money or its equivalent of an obligation or debt owing . . . ." (Emphasis added; internal quotation marks omitted.)

A check is a form of written instruction to pay a sum of money to a payee. See General Statutes §§ 42a-3-103 and 42a-3-104.[2] If it is honored, it constitutes payment. Under most circumstances, a check also evidences a promise to pay a sum of money, in the event that the check is dishonored. See, e.g., *Tuckel* v. *Jurovaty*, supra, 141 Conn. 651. In *Tuckel*, the court stated that "[t]he indorsement of the check made it negotiable in the

---

[2] Title 42a of the General Statutes is Connecticut's enactment of the Uniform Commercial Code and may be cited as such. See General Statutes § 42a-1-101 et seq. Under these provisions, a check is defined in relevant part as a "draft, other than a documentary draft, payable on demand and drawn on a bank . . . ." General Statutes § 42a-3-104 (f). A draft is defined as an "instrument" that is "an order." General Statutes § 42a-3-104 (e). Finally, an order is a form of "written instruction to pay money . . . ." General Statutes § 42a-3-103 (6).

hands of the defendant but it did not convert it into money. . . . The check still retained its character as a written promise to pay in accordance with its terms." Id.

If an insurer agrees to a settlement of a third party claim and issues its check for the amount agreed upon, but the check is not honored, then payment of the claim has not been made.

It follows that payment of a claim made against an underlying tortfeasor's insurance policy and exhaustion of that policy sufficient to trigger a supplementary claim made under the underinsured motorists provisions of the claimant's own policy cannot occur or commence until the day the check is honored.

It seems to me that the situation is analogous to an executory accord until the check is honored and actually paid and that any statute of limitations which payment triggered the running of should not begin to run against the plaintiff until actual payment occurs.

" 'An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty.' 2 Restatement (Second), Contracts § 281 (1981); *W. H. McCune, Inc.* v. *Revzon*, 151 Conn. 107, 109, 193 A.2d 601 (1963)." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 809, 626 A.2d 729 (1993).

"Satisfaction of a claim may be found in either the promise to settle or the full performance of that promise. Connecticut law comports with the view that the intention of the parties is determinative of whether a settlement agreement constitutes an executory accord or a substitute agreement. *Halloran* v. *Fischer*, 126 Conn. 44, 46, 9 A.2d 290 (1939)." *Air-Care N.O. Nelson Co.* v. *Patchet*, 5 Conn. App. 203, 205, 497 A.2d 771 (1985).

"It is frequently difficult to determine as a matter of fact whether the parties agreed that the settlement agreement itself constituted satisfaction of the original cause of action, or whether the performance of the agreement was intended to be the satisfaction. 15 Williston, Contracts (3d Ed. Jaeger) § 1847." *Air-Care N. O. Nelson Co.* v. *Patchet,* supra, 5 Conn. App. 205.

" '[I]t is not a probable inference that a creditor intends merely an exchange of his present cause of action for another. It is generally more reasonable to suppose that he bound himself to surrender his old rights only when the new contract of accord was performed.' 15 Williston, supra, § 1847." *Air-Care N. O. Nelson Co.* v. *Patchet,* supra, 5 Conn. App. 206.

In this kind of factual scenario, I would hold that the six year contract statute of limitations did not begin to run until the check of the tortfeasor's insurer was honored because not until payment was the policy exhausted by payment.

The majority treats the delivery of an uncertified check by the tortfeasor's insurer as the commencement date of the statute of limitations period, or not, depending on future events unknown at the time of the check's delivery. Under this rule, if the uncertified check "is in fact paid in due course" at a later date, then the earlier delivery is treated as the beginning of the statute of limitations period. Conversely, "if the check is [later] dishonored on presentment," the majority states that delivery is then deemed not to have triggered the limitations period after all. Where does this leave the plaintiff when he takes delivery of the check? Under this rule, the plaintiff's time to exercise his rights to recover underinsured benefits begins to run before he even has any such rights. This rule is "inconsistent with basic limitations principles." *Bay Area Laundry & Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of*

*California, Inc.*, 522 U.S. 192, 200, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997). A statute of limitations is a "period during which suit [can] be brought"; *Clark* v. *Jeter*, 486 U.S. 456, 463, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988); and "during which [a defendant's] rights may be subject to challenge." *United States* v. *Beggerly*, 524 U.S. 38, 49, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998). The United States Supreme Court stated: "The question presented [in an earlier Supreme Court case] was whether a statute of limitations could commence to run on one day while the right to sue ripened on a later day. We answered that question, and only that question, 'no,' [unless the legislature has told us otherwise in the legislation at issue]. . . . [If not] a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief. See *Reiter* v. *Cooper*, 507 U.S. 258, 267 [113 S. Ct. 1213, 122 L. Ed. 2d 604] (1993) ('While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute')." (Citation omitted.) *TRW, Inc.* v. *Andrews*, 534 U.S. 19, 34 n.6, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001).

A statute of limitations is a span of time in which a plaintiff has the right to bring a cause of action and after which the action is barred. Our Supreme Court's use of the term " '*exhausted* by payment' "; (emphasis added) *Ciarelli* v. *Commercial Union Ins. Cos.*, 234 Conn. 807, 810, 663 A.2d 377 (1995); does not contemplate a looming cloud over the plaintiff's right to demand arbitration and to ask a court to compel arbitration if the demand is refused. By exhaustion, our Supreme Court meant that on the date in question, without the information derived from any later hind-

sight review, the plaintiff could have successfully demanded arbitration because the policy limits were paid. The policy limits of the insured tortfeasor cannot be "exhausted" when the value indicated by the limits has not yet been transferred. The payment process has perhaps begun, but it has not been completed, and thus the policy has not been exhausted, until the plaintiff has the money.

For these reasons, I respectfully dissent from the majority opinion.