[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #103
This action arises out of an accident between a bus and another vehicle at an intersection in Bridgeport. According to the complaint, on the date of the accident, November 20, 2000, the plaintiff, Charlene Mackall, was a passenger on the bus owned by the Greater Bridgeport Transit Authority (GBTA) and driven by GBTA employee, Ernest Montgomery. The bus collided with a vehicle owned and operated by Lois Brooks. Mackall alleges that the "accident was a direct and proximate result of the negligence and carelessness of Brooks."
On November 8, 2001, Mackall filed a three count complaint. Count one is a negligence claim directed at Brooks, count two is directed at Montgomery, and count three is directed at the GBTA. In counts two and three, Mackall seeks damages under the underinsured/uninsured motorist provisions of an insurance contract held by the GBTA. The GBTA and Montgomery admit that the bus in which Mackall was a passenger was insured by the Hartford Fire Insurance Company," and that the policy in effect "provided for uninsured and underinsured automobile benefits in the amount of $40,000 per accident." (Defendants' Answer, p. 2.)
On February 21, 2002, the GBTA and Montgomery filed a motion for summary judgment on the ground that there are no genuine issues of material facts and they are entitled to judgment as a matter of law. It is their contention that Mackall settled her claim against Brooks for less than the liability limits provided for by Brooks' policy and thus has not exhausted the tortfeasor's policy limits which, as a matter of law, bars her claims against them for underinsured motorist benefits. Mackall did not file an objection to the motion for summary judgment.
 DISCUSSION
Montgomery and the GBTA's argument is based in part on General Statutes § 38a-336 (b) which provides in relevant part: "[A]n insurance company shall be obligated to make payment to its insured up to the CT Page 9200 limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. . . ."
"Section 38a-336 (b) establishes the exhaustion requirement for underinsured motorist coverage." Ciarelli v. Commercial Union Ins. Cos.,234 Conn. 807, 810, 663 A.2d 377 (1995). This case is controlled byContinental Ins. Co. v. Cebe-Habersky, 214 Conn. 209, 212, 571 A.2d 104
(1990), in which the Connecticut Supreme Court held that, "General Statutes § 38-175c (b)(1) [now codified as General Statutes §38a-336 (b)] obligates insurance companies to pay on a policy's uninsured motorist coverage only after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments orsettlements. . . ." (Emphasis in original; internal quotation marks omitted.) In so holding, the court determined that the insured, by accepting a payment from the tortfeasor's insurer that was $3000 less than the limits on the tortfeasor's policy, had failed to exhaust that policy. As the court explained, the term "`exhaust' means to `draw off or let out completely: to use up; [or] whollyexpend' . . . There is nothing in the common meaning of `exhaust' to suggest that partial use of what is available amounts to its exhaustion." (Citation omitted; emphasis in original.) Id.
Montgomery and the GBTA submit several documents in support of their argument that Mackall failed to exhaust the limits of Brooks' policy. The first document is "Requests to Admit Directed Towards Plaintiff Charlene Mackall." (Defendants' Memorandum, Exhibit A, pp. 1-4.) Montgomery and the GBTA maintain that because Mackall failed to respond to these requests within 30 days, the requests are deemed admitted pursuant to P.B. § 13-23 (a)[1]. This is an accurate statement.[2] In this document, the plaintiff "admits" that she executed a release and settled her claim with Brooks for $17,000. She also "admits" that at the time Brooks' automobile policy provided liability coverage for bodily injury in the amount of $100,000 per person, $300,000 per accident. Montgomery and the GBTA also submit a copy of a document titled "Release and Settlement." In this document, the named claimant, Charlene Mackall, for the "consideration of $17,000 . . . [releases] and forever [discharges]" both Brooks and Brooks' insurance carrier, the Hartford Insurance Company, "from any and all actions, claims and demands whatsoever . . . due to an accident on November 20, 2000." (Defendants' Memorandum, Exhibit A, p. 5.) Additionally, Montgomery and the GBTA submit a copy of the declaration page of Brooks' insurance policy indicating limits in liability coverage for bodily injury of $100,000 per person/$300,000 per accident." (Defendants' Memorandum, Exhibit A, p. 6.) Absent any CT Page 9201 objection or opposing memorandum from Mackall, the evidence submitted by Montgomery and the GBTA is left undisputed.
Accordingly, Montgomery and the GBTA have met their burden of bringing forth evidence demonstrating that Mackall did not exhaust the tortfeasor's policy limits as required.[3] Pursuant to ContinentalIns. Co. v. Cebe-Habersky, she is therefore is precluded from going forward on a claim against them for underinsured motorist benefits.
For the foregoing reasons, Montgomery and GBTA are entitled to summary judgment as a matter of law. The motion is granted.
GALLAGHER, J.